IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THE ALABAMA DENTAL ASSOCIATION, INC. LEW MITCHELL, DMD, and, JAMES SANDERSON, DMD, | * * * * * | |
| Plaintiffs, | * * | Civil Action No.:    2:05cv1230 |
| vs. | * * | |
| BLUE CROSS AND BLUE SHIELD OF ALABAMA, | * * * | |
| Defendant. | * | |

**MOTION TO REMAND AND
MEMORANDUM IN SUPPORT THEREOF**

COME NOW the Plaintiffs, pursuant to 28 U.S.C.A.§1447(c), and hereby move this Honorable Court to remand this action to the Circuit Court from which it was removed. This action is not a case arising out of the Constitution, laws, or treaties of the United States. 28 U.S.C. §1331. Plaintiffs assert only claims arising under Alabama common law and statutes. This Court lacks subject matter jurisdiction and this action is not one for which removal is provided by 28 U.S.C. §1441(a).

**STATEMENT OF FACTS**

Plaintiffs' provide dental services to Defendant BCBS's subscribers as third party health care providers. Pursuant to contracts with BCBS or under a third party beneficiary interest, Plaintiffs are entitled to be compensated in a timely manner for rendering covered dental services in accordance with standard dental coding procedures, as well as rates. Plaintiffs relied upon BCBS's representations, both express and implied, that they would be

paid for rendering covered dental services pursuant to, and consistent with, Current Dental Terminology (CDT) codes submitted on the dental claim forms. Plaintiffs accept this arrangement by, *inter alia*, providing those services, by not billing the insured, by requesting payment for those services from BCBS or a designated payer in the manner required by BCBS, including using the ADA Dental Claim Form for in-network providers, and generally not balance billing the insured for amounts not covered by BCBS. *Complaint*, ¶ 8.

By embodying the CDT codes in a standard, agreed-upon format, Plaintiffs are entitled to receive objective claim processing and payment at agreed-upon rates, either as set forth in in-network contracts or, for out-of-network dental providers, in the subscriber contracts. Despite this fact, BCBS takes advantage of the very uniformity of the claim submission form to process Plaintiffs' claims through automated logic systems. By applying automated claim processing, rather than paying Plaintiffs for covered dental services in accordance with standard coding practices, BCBS engages in a practice designed to systematically deny, delay and diminish payments to Plaintiffs. *Complaint*, ¶ 11.

BCBS filed its Notice of Removal, removing the matter from the Circuit Court of Montgomery County, Alabama to this Honorable Court. The Defendant erroneously bases the removal on three grounds completely inapplicable to Plaintiffs' claims. First, BCBS assert the Plaintiffs' state law claims are "preempted" by the Federal Employees' Health Benefits Act ("FEHBA"). Second, BCBS alleges that federal jurisdiction is created by 28 U.S.C. § 1442(a)(1), the "Federal Officer Removal Statute." Third, Defendant argues the Plaintiffs' state law claims are removable under 29 U.S.C. § 1132 (ERISA).

The BCBS Removal failed to demonstrate that there is federal jurisdiction over Plaintiffs' state law causes of action arising out of plaintiffs' agreements with BCBS to render dental services to BCBS' subscribers. This case should therefore be remanded to state court.

## STANDARD OF REVIEW

A removal motion should be strictly construed against removal and all doubts should be resolved in favor of remand. *Shamrock Oil & Gas v. Sheets*, 331 U.S. 100 (1941); *Butler v. Polk*, 592 F.2d 1293 (5th Cir. 1979); and *Paxton v. Weaver*, 553 F.2d 936 (5th Cir. 1977). Any party who urges federal jurisdiction on a federal court bears the burden of showing that the jurisdiction exists. *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989), (citing *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir. 1983)).

It is axiomatic that federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994). They possess only that power authorized by the Constitution and by statute. Id. (citing *Willy v. Coastal Corp.*, 503 U.S. 131, 136-137, 112 S. Ct. 1076, 1080, 117 L. Ed. 2d 280 (1992), and *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541, 106 S. Ct. 1326, 1331, 89 L. Ed. 2d 501 (1986)). These jurisdictional grants are not to be expanded by judicial decree. *Id.* 511 U.S. at 377, (citing *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 71 S. Ct. 534, 95 L. Ed. 702 (1951)). It is to be presumed that a cause lies outside this limited jurisdiction, *Id.* 511 U.S. at 377 (citing *Turner v. Bank of North America*, 4 U.S. (4 Dall.) 8, 11, 1 L. Ed. 718 (1799)), and the burden of establishing the contrary rests upon the party asserting jurisdiction, id. (citing *McNutt v.*

*General Motors Acceptance Corp.*, 298 U.S. 178, 182-183, 56 S. Ct. 780, 782, 80 L. Ed

1135 (1936)). Removal statutes are narrowly construed; when the defendant and the

plaintiff clash about jurisdiction, any uncertainties must be construed in favor of remand.

*Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Therefore, Plaintiffs'

Motion to Remand is due to be **GRANTED**.

## ARGUMENT

### A.   "COMPLETE" AND "ORDINARY" PREEMPTION UNDER FEHBA.

In considering whether the court possesses subject matter jurisdiction over a

case or controversy, federal district courts are guided by the well-pleaded complaint rule,

which provides that the plaintiff's properly pleaded complaint governs the jurisdictional

determination. See *Louisville & Nashville R.R. v. Mottley*, 211 U.S. 149, 152, 29 S. Ct.

42, 43, 53 L. Ed. 126, L. Ed. 126 (1908). Pursuant to that rule, a case may be removed

based on federal question jurisdiction only when the plaintiff's statement of his own

cause of action shows that it is based on federal law. *BLAB T.V. of Mobile, Inc. v.

Comcast Cable Communications, Inc.*, 182 F.3d 851, 854 (11th Cir. 1999) (citing

*Mottley*). Stated differently, only state-court actions that originally could have been filed

in federal court may be removed to federal court. *Caterpillar, Inc. v. Williams*, 482 U.S.

386, 392, 107 S. Ct. 2425, 2429, 96 L. Ed. 2d 318. The presence of a federal defense

does not make the case removable, even if the defense is preemption and even if the

validity of the preemption defense is the only issue to be resolved in the case. *Id.* at 393.

The well-pleaded complaint rule generally makes the plaintiff the master of the claim; in

the vast majority of cases, he or she may avoid federal jurisdiction by exclusive reliance

on state law. *Id.* at 392. In the instant case, because Plaintiffs asserted only state-law

claims in the complaint, the well-pleaded complaint rule trumps the preemption defense or "ordinary preemption". *BLAB T.V. of Mobile, Inc.*, 182 F.3d at 855. As such, the court is required to remand due to a lack of subject matter jurisdiction.

Plaintiffs' Complaint filed in state court focuses exclusively on state law claims. Plaintiffs agreed to render dental services to their patients, BCBS subscribers, according to mutually agreed upon criteria and guidelines. Plaintiffs submitted claims according to proper procedures and Defendant BCBS either paid at a lower rate than the one agreed upon or did not pay at all. These facts form the basis of Plaintiffs' state law claims, all of which are well recognized under Alabama law.

Plaintiffs' claims involve only state law causes of action, and BCBS apparently does not challenge this fact. Rather, the Defendant relies on an independent corollary to the well-pleaded complaint rule, namely "Complete preemption".

Complete preemption occurs when the pre-emptive force of a statute is so "extraordinary" that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule. *Blab T.V. of Mobile, Inc.*, 182 F.3d at 854 (citing *Caterpillar*, 482 U.S. at 393). Because they are recast as federal claims, state law claims that are held to be completely preempted give rise to federal question jurisdiction. *Id.* (citing *McClelland v. Gronwaldt*, 155 F.3d 507, 512 (5th Cir. 1998)). Although they share similar titles, the doctrines of ordinary preemption and complete preemption present distinctly different issues -- a difference not merely of scope but of quality. Ordinary preemption is simply a defense to the application of state law. See 14B *C. Wright & A. Miller*, Federal Practice and Procedure § 3722.1 (3d ed.). Ordinary preemption operates to dismiss state claims on the merits and may be invoked

in either federal or state court. *BLAB T.V. of Mobile, Inc.*, 182 F.3d at 855. In contrast, complete preemption provides a basis for federal jurisdiction rather than simply a defense: "In complete preemption, a federal court finds that Congress desired to control the adjudication of the federal cause of action to such an extent that it did not just provide a federal defense to the application of state law; rather, it replaced the state law with federal law and made it clear that the defendant has the ability to seek adjudication of the federal claim in a federal forum." 14B *C. Wright & A. Miller*, Federal Practice and Procedure § 3722.1 (3d ed.).

Neither the Supreme Court nor the Eleventh Circuit Court of Appeals has adopted a specific test for determining whether a particular federal statute completely preempts state law. However, it is clear from both the Supreme Court's decision in *Metropolitan Life Insurance* and the Eleventh Circuit's decision in *BLAB T.V. of Mobile, Inc.*, that Congressional intent is the ultimate consideration in such inquiries. See *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64, 95 L. Ed. 2d 55, 107 S. Ct. 1542 (1987) (stating that the lawsuit in that case was "necessarily federal in character by virtue of the clearly manifested intent of Congress"); and *BLAB T.V. of Mobile, Inc.*, 182 F.3d at 857 (stating that complete  preemption analysis focuses primarily upon "evaluating Congress's intent, which is the 'touchstone' of federal court removal jurisdiction" (quoting *Metropolitan Life Insurance*, 481 U.S. at 66). Accordingly, this Court should attempt to discern whether Congress intended to imbue the FEHBA with "that extraordinary pre-emptive power . . . that converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Insurance*, 481 U.S. at 65.

A review of *Metropolitan Life Insurance* reveals that the Supreme Court focused on three particular areas in assessing the ultimate issue of Congressional intent: (1) ordinary preemption; (2) civil enforcement; and (3) congressional direction. See *id.* at 62-67. The *Metropolitan Life Insurance* court began by noting that § 502(a)(1)(B) of ERISA, codified at 29 U.S.C. § 1132(a)(1)(B), provided an exclusive federal cause of action for resolution of claims relating to an employee benefit plan. *Id.* at 63 (citing *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S. Ct. 1549, 95 L. Ed. 2d 39 (1987)) That court concluded the preemption defense (or ordinary preemption) applied, and the plaintiff could not proceed under his common law contract and tort claims. *Id.* Next, the court examined ERISA's civil enforcement and jurisdictional provisions. Section 502(a)(1)(B), the civil enforcement provision (codified at 29 U.S.C. § 1132), provided that "[a] civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." The court stated that the combination of ordinary preemption and this right to bring a civil action, standing alone, might give rise to complete preemption; however, the court stated it would be "reluctant" to reach such a conclusion in the absence of clear direction from Congress. *Id.* at 64-65.

According to the *Metropolitan Life* Insurance court, "...........the legislative history consistently sets out this clear intention to make § 502(a)(1)(B) suits brought by participants or beneficiaries federal questions for the purposes of federal court jurisdiction in like manner as § 301 of the LMRA." *Id.* at 66.

Turning to the instant case, the preemptive effect of the FEHBA, codified at 5 U.S.C. § 8901 et seq. 5 U.S.C. § 8902(m)(1) currently provides that:

> "The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans."

Prior to October 9, 1998, this same provision read as follows:

> "The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans to the extent that such law or regulation is inconsistent with such contractual provisions."

Clearly, the 1998 amendment's deletion of the inconsistency requirement expanded the preemptive effect of § 8902(m)(1) -- which, even prior to the amendment, served as the basis for ordinary preemption. See, e.g., *Blue Cross & Blue Shield of Fla., Inc. v. Florida Dep't of Banking and Finance*, 791 F.2d 1501, 1506 (11th Cir. 1986) (holding that contract terms regarding disposition of unclaimed proceeds preempted inconsistent provisions of Florida's Unclaimed Property Act). Because § 8902(m)(1) provides that the contract terms, not FEHBA, will preempt state law, only ordinary preemption applies under FEHBA. See, e.g., *Ramirez v. Humana, Inc.*, 119 F. Supp. 1307 (M.D. Fla. 2000).

In *Ramirez,* the court found that Congress did not intend FEHBA to completely preempt state law. More specifically, the *Ramirez* court held that when Congress amended the statute, "it was concerned with ordinary preemption rather than complete preemption." *Ramirez*, 119 F. Supp. 2d at 1313. The court in *Ramirez* went so far as to state, "If Congress desires to confer federal removal jurisdiction over FEHBA cases, it must clearly demonstrate its intent to do so." *Id.*

8

The *Ramirez* court further held, "This distinction would seem to implicate the complete preemptive effect of FEHBA, as complete preemption pursuant to § 8902(m)(1) would require supplanting of state law by federal contract terms rather than a federal law." *Id*. at 1312.

No argument exists to support BCBS's argument that the state law claims asserted by Plaintiffs, independent dental providers and non-FEHBA entities, are preempted by federal law. Courts from numerous Circuits, including the Eleventh Circuit, have consistently held that FEHBA's "relates to" preemption is not "complete preemption," and FEHBA will only displace state law under certain facts. However, these facts are not presented here.

The plaintiff(s) in nearly every case BCBS cited in its brief were participants of a federal employee plan suing under his/her plan for benefits. The cases BCBS cited in which the plaintiff(s) was a provider as opposed to a participant, centered on an interpretation of the terms of the plan in which the participants assigned their rights to the provider. The instant case, does not involve a dispute over an enrollee's plan in which the enrollee assigned its rights under the plan to the provider. In fact, the in-network providers' contract with BCBS expressly prohibits "assignment of rights" except in limited circumstances not applicable to the instant case. *See* Preferred Dentist Agreement § 11.1 (Exhibit A). Additionally, BCBS prohibits the assignment of rights from an enrollee to an out-of-network provider. As such, the terms of the enrollees' plan are not in dispute in this case.

Plaintiffs understand the fact that ordinary preemption might very well apply to their claims. The sole issue before this Honorable Court is whether the preemption

involved here is "complete" such that removal is proper. Conversely, the Plaintiffs in the instant case are third party dental providers with claims that have no correlation to the federal government or federal employees. Based on the Plaintiffs' allegations, the enrollees' health plans and its terms are simply immaterial. Additionally, no civil enforcement provision under the FEHBA is available to the Plaintiffs. This is not a claim asserted by a plan enrollee or participant to interpret or enforce the terms of the FEHBA plan. Finally, considering the Plaintiffs alleged only state-law claims in their Complaint, this Honorable Court should follow the preemption analysis set forth in *Ramirez* and remand due to a lack of subject matter jurisdiction.

### B.    BCBS IS NOT A "FEDERAL OFFICER" WITHIN THE MEANING OF 28 U.S.C. § 1442(a)(1).

Defendant alleges that it is entitled to "federal officer" removal pursuant to 28 U.S.C. § 1442(a)(1). This incredibly tenuous argument has been advanced by BCBS in prior cases and uniformly rejected by the federal courts.

The Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), is designed to protect officers of the federal government, who when acting pursuant to authority granted them under federal law, run afoul of the laws of a state. *Willingham v. Morgan*, 395 U.S. 402, 23 L. Ed. 2d 396, 89 S. Ct. 1813 (1969). One of the most important functions of this right of removal is to allow a federal court to determine the validity of an asserted official immunity defense. *Id.* Removal pursuant to section 1442(a)(1) is meant to "ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." *Id.* (quoting *Arizona v. Manypenny*, 451 U.S. 232, 101 S. Ct. 1657, 68 L. Ed. 2d 58 (1981)). Application of the federal officer removal statute is appropriate where (1) the defendant is a "person" within the meaning of the statute, (2) the

defendant acted pursuant to a federal officer's directions when committing the acts that allegedly give rise to the injury at issue, and (3) the defendant can assert a colorable federal defense. *Id.* at 397-98

BCBS contends the Plaintiffs sued BCBS under state law for actions in connection with BCBS's administration of a FEHBA plan that is subject to the strict and comprehensive control and oversight of a federal agency, the Office of Personnel Management ("OPM"). However, BCBS failed to offer any facts to suggest it was acting pursuant to federal authority when it fraudulently misrepresented and suppressed information regarding coverage. Moreover, the claims do not arise out of any of the procedures dictated by the OPM. BCBS utilized a fraudulently designed computer program to minimize claims exposure. Accordingly, BCBS could not have been acting pursuant to federal authority when it fraudulently misrepresented and suppressed coverage information and processes. *See Transitional Hosps. Corp. of La., Inc. v. La. Health Serv. & Indem. Co., 2002 U.S. Dist. LEXIS 10852 (E.D. La. June 11, 2002)* (holding removal was improper because Blue Cross failed to provide a factual basis upon which to conclude that its employees were acting pursuant to any federal authority when they allegedly misrepresented coverage).

BCBS relies on the *Howard*, a case pending before Judge Bowdre in the Northern District of Ala., to support its contention that the Plaintiffs' claims are in connection with actions performed under the direction of a federal agency and federal officers. *Notice of Removal*, ¶ 9(a). Judge Bowdre's Order denying remand relies heavily on *Anesthesiology Assocs. Of Tallahassee, Fla., P.A. v. Blue Cross Blue Shield of Fla., Inc.*, ("*AAOT*") an unpublished decision rendered by the Eleventh Circuit on March 18,

11

2005. Judge Bowdre reluctantly denied remand based on the applicability of the federal removal statute. The Court suggested several times in the Order denying remand that *AAOT* might not be controlling. In fact, the Court stated in the Nov. 22, 2005 Order that *Howard* and *AAOT* "may be distinguishable based on the nature of the allegations of the complaint." *Notice of Removal*, Exhibit D. In a telling conclusion, the Order states in pertinent part: "...some doubts exist as to whether the *AAOT* case controls this decision.." The decision to deny remand was so unsettled that the Court invited the MDL court to take another look at the propriety of federal jurisdiction in *Howard*.

Independent of the significant factual differences between the instant case and *AAOT,* unpublished decisions are not controlling. In a case strikingly similar to the instant case, *Transitional Hosps. Corp. of La., Inc*, *supra*, BCBS asked the court to adopt the analysis from *AAOT* when addressing FEHBA preemption on remand. The court in *Transitional Hosps. Corp. of La., Inc.,* held:

> "According to the Eleventh Circuit's Internal Operating Procedures, the panel designates a case as "unpublished" when it believes that the case has no precedential value. (11th Cir. R. 36-3, IOP 6). The Eleventh Circuit permits courts in its jurisdiction to cite unpublished decisions as persuasive authority but reliance on them is not favored. *Id.* Unpublished Eleventh Circuit decisions are not binding precedent. *Id.* Thus, even if *Anesthesiology Associates* were binding on this Court, Kindred's claim is distinguishable from the claim raised in that case."

*Transitional Hosps. Corp. of La., Inc,* at 11.

Much like *Transitional Hosps. Corp. of La., Inc.,* the claims in the instant case are distinguishable from the claims raised in *AAOT.* BCBS's reliance on *AAOT* is misguided because the plaintiff in that case was asserting a claim as "an assignee of ERISA-plan

reimbursement rights" versus a third party dental care provider suing under state tort law.

The genesis of the *AAOT* decision is that the Federal Officer Removal Statute permits a health plan insurer providing benefits under a federal program to remove a case where the provider is suing the insurer to compel some action that would be contrary to the terms of the federal plan. For instance, an attempt to force the plan to reimburse the provider rather than the participant. The Plaintiffs in the case at hand are not challenging the terms of an enrollee plan and certainly not the terms of a federal plan, like the plan at issue in *AAOT*.

BCBS failed to present any colorable federal defenses as required under § 1442(a)(1). BCBS erroneously asserts that BCBS enjoys official and sovereign immunity because the Plaintiffs' case implicates funds in the U.S. Treasury, making the United States the real party in interest. Judge Albritton addressed this issue in his opinion from *Lambert v. Mail Handlers Benefit Plan,* 886 F. Supp. 830, 1995 U.S. Dist. LEXIS 6765 (M.D. Ala. 1995). In *Lambert*, Judge Albritton held:

> "Although it is true that the federal treasury pays a large percentage of the bills for the plan at issue, this alone does not suffice. See, e.g., *Rocky Mountain Hospital and Medical Service v. Phillips,* 835 F. Supp. 575, 578 (D.Colo. 1993), affirmed, 28 F.3d 113 (10th Cir. 1994), cert. granted, 115 S. Ct. 714 (1995), cert. dismissed, 1995 WL 139416 (March 31, 1995). This issue presents no uniquely federal interest comparable to the procurement of military equipment at issue in Boyle. Additionally, the impact of allowing a state court to hear this contract dispute between private parties will not frustrate federal policy. As noted above, there is no indication that state courts are not able to apply the federal law, or that allowing state courts to hear this issue will result in the frustration of Congressional intent. In fact there is substantial evidence to the contrary. Given the determination by this court that Congress could have completely preempted state

13

> law and state jurisdiction in this area and chose not to, it
> would be anomalous to then decide that federal common law
> brought about what the legislature determined was not
> necessary."

*Lambert,* 886 F. Supp. at 837.

Considering this Court's ruling in *Lambert*, BCBS's sovereign immunity defense is not viable which is fatal for removal under § 1442(a)(1). Additionally, BCBS failed to prove they acted pursuant to a federal officer's directions when they committed the wrongful acts at issue. Accordingly, this Honorable Court should rule BCBS is not a "federal officer" under § 1442(a)(1), thereby making removal improper.

### C.   THIS COURT DOES NOT HAVE JURISDICTION UNDER ERISA.

BCBS invokes the artfully plead complaint doctrine and argues that ERISA preempts Plaintiffs' state law claims. BCBS attempts to establish that Plaintiffs' claims are preempted by ERISA either as derivative claims for benefits due under alleged employee benefit plans as assigned by plan participants or beneficiaries, pursuant to 29 U.S.C. § 1132(e)(1).

ERISA contemplates two types of preemption: complete preemption under 29 U.S.C. § 1132 and conflict preemption under 29 U.S.C. § 1144. In complete preemption under § 1132, ERISA occupies a particular field. *Metropolitan Life,* 481 U.S. at 66. "This functions as an exception to the well-pleaded complaint rule: 'Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.'" *Metropolitan Life,* 481 U.S. at 64-65. Section 1132, by providing the civil enforcement ERISA action, "completely preempts any state cause of action seeking the same relief, regardless of how artfully pled as a state action." *Id*. Thus, § 1132 provides a basis for federal subject matter jurisdiction.

Where issues of ERISA preemption of state law claims, however, arise under ERISA's conflict preemption provision, 29 U.S.C. § 1144, no basis for removal exists. "State law claims which fall outside the scope of ERISA's civil enforcement provision, § 1132, even if preempted by § 1144, are still governed by the well-pleaded complaint rule, and, therefore, are not removable under the complete-preemption principles." *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1 at 23, 103 S. Ct. 2841, 77 L. Ed. 2d 420. As the Eleventh Circuit recently explained in the *Butero* case:

> "The second kind of preemption we will call 'defensive.' It originates in ERISA's express preemption provision, 29 U.S.C. § 1144(a). Defensive preemption provides only an affirmative defense to certain state-law claims. *See id.* As an affirmative defense, defensive preemption does not furnish federal subject-matter jurisdiction under 28 U.S.C. § 1331."

*Butero v. Royal Maccabees Life Ins. Co.,* 174 F.3d 1207, 1211 (11th Cir. 1999).

Therefore, to the extent that BCBS relies on § 1144 as its basis for removal, removal is clearly improper. That provision, while providing BCBS with a potential defense to Plaintiffs' state law claims, does not confer upon this Court any federal subject matter jurisdiction.

Turning now back to ERISA's complete preemption provision, 29 U.S.C. § 1132(a) provides that a participant or beneficiary of an employee welfare benefit plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Although the statute clearly provides only that a participant or beneficiary may bring such civil actions, numerous courts have determined that where a participant or beneficiary assigns to a third-party service

provider his or her rights to health care benefits and that assignment is valid, the third-party service provider may bring a derivative action for health care benefits due to the participant or beneficiary under the terms of the plan. *See, e.g., Hermann Hospital v. MEBA Medical & Benefits Plan,* 845 F.2d 1286, 1289 (5th Cir. 1988).

Without such an assignment, a third-party service provider "has no standing as a 'non-enumerated party' to pursue an action described in § 1132(a)." *Id.* "Health care providers do not have independent standing to seek redress under ERISA." *Memorial Hospital System v. Northbrook Life Ins. Co.*, 904 F.2d 236, 249 (5th Cir. 1990).

While BCBS cited no case law in support of its ERISA argument, it is important to note that, while the Fifth Circuit in *Herman* recognized a healthcare provider's derivative right to sue, that case involved a provider attempting to file suit under ERISA as opposed to BCBS here filing suit in State court wholly under valid State law causes of action. Also, *Herman* concerned one specific patient who had assigned his rights to the provider. The patient was unquestionably covered under an ERISA plan. Here, Plaintiffs have apparently provided services to many BCBS subscribers, but this Court has no indication how many, if any, of those subscribers were covered by ERISA plans, or a government plan for that matter, as opposed to being covered under an individual plan or other non-ERISA plan. In fact, BCBS has failed to provide the Court with any ERISA plan governing Plaintiffs' claims. Moreover, the Fifth Circuit remanded *Herman* to determine whether the assignment was valid, indicating that no assumption could be made on that matter. Here, this Court has evidence attached hereto that any assignments whatsoever are expressly prohibited by Defendant BCBS. Indeed, Plaintiffs' did purport to be an assignee of a participant or beneficiary (as to the out-of-network

16

dentists) in the Complaint in terms of payment. However, BCBS enrollees are prohibited from assigning claims to out-of-network dentists. As such, the out-of-network dentists do not have standing to sue under the ERISA statute.

BCBS has thus failed to establish either prong of ERISA preemption as a basis for removal. First, Plaintiffs' are not participants or beneficiaries of an ERISA plan and has not been shown to be an assignee of a participant or beneficiary. Second, Plaintiffs' complaint is based, in part, on separate provider agreements as opposed to any ERISA plan or plans, and no evidence has been offered to the contrary.

## CONCLUSION

Based on the foregoing, Plaintiffs' Motion to Remand is due to be **GRANTED**. Plaintiffs ask this Court to issue an order remanding this action back to the Circuit Court.

/s/ Clinton C. Carter
CLINTON C. CARTER (CAR 112)
Attorneys for Plaintiffs

OF COUNSEL:

**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
PO Box 4160
Montgomery, Alabama 36103-4160
Telephone:   (334) 269-2343
Facsimile:    (334) 954-7555

**MCCALLUM, METHVIN & TERRELL, P.C.**
2201 Arlington Ave. S.
Birmingham, Alabama 35205-0000
Telephone:   (205) 939-0199
Facsimile:    (205) 939-0399

**MCCALLUM, HOAGLUND, COOK & IRBY, LLP**
2062ColumbianaRd
Vestavia Hills, AL 35216-2147
Telephone:   (205) 824-7767
Facsimile:    (205) 824-7768

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2006, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such filing

to the following:


Jere F. White, Jr.
William H. Brooks
Terrence W. McCarthy
**LIGHTFOOT, FRANKLIN & WHITE**
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203-3200

James L. Priester
Edward A. Hosp
Grace C. Robinson
**MAYNARD, COOPER & GALE**
1901 6th Avenue North, Ste. 2400
Birmingham, Alabama 35203-2618


> */s/ Clinton C. Carter*
> OF COUNSEL