**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

---

| | |
|---|---|
| **THE ALABAMA DENTAL ASSOCIATION, et al.,** | ) ) ) |
| | ) |
| Plaintiffs, | ) **Civil Action No.:2:05-cv-1230-MEF** |
| | ) |
| v. | ) |
| | ) |
| **BLUE CROSS AND BLUE SHIELD OF ALABAMA,** | ) ) |
| | ) |
| Defendant. | ) |

---

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

James L. Priester
Edward A. "Ted" Hosp
Grace C. Robinson
Attorneys for Blue Cross
Blue Shield of Alabama

**OF COUNSEL:**

**MAYNARD, COOPER & GALE, P.C.**
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000

Jere F. White, Jr.
William H. Brooks
Terrence W. McCarthy
Attorneys for Blue Cross
Blue Shield of Alabama

**OF COUNSEL:**

**LIGHTFOOT, FRANKLIN & WHITE, L.L.C.**
The Clark Building
400 North 20th Street
Birmingham, AL 35203-3200
(205) 581-0700

## TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………………………i

INTRODUCTION & SUMMARY………………………………………………………….1

FACTUAL AND REGULATORY BACKGROUND…………………………………………2

  A. The Majority of Blue Cross Subscribers Receive Health Benefits
    Coverage under ERISA Plans………………………………………………..2

  B. The FEHBA Program………………………………………………………4
    1. The Service Benefit Plan…………………………………………4
    2. Contract and Plan Terms and Limitations………………………..6
    3. OPM's Police Power over Carriers……………………………….7
    4. OPM's Administrative Review Procedures and
      Subsequent Litigation……………………………………………7
    5. FEHBA's Preemption Provision………………………………..8

ARGUMENT………………………………………………………………………...8

I. THE COURT HAS REMOVAL JURISDICTION BECAUSE OF THE
  CLAIMS FOR PAYMENTS FOR SERVICES TO FEHBA SUBSCRIBERS………….9

  A. The Court Has Removal Jurisdiction Because FEHBA Completely
    Preempts Plaintiffs' State Law Claims………………………………………9

  B. The Court Has Removal Jurisdiction over the Claims Involving
    FEHBA Enrollees under 28 U.S.C. §1442(a)(1)………………………………..17

III. PLAINTIFFS' CLAIMS ARE COMPLETELY PREEMPTED BY
   ERISA.  THIS COURT THEREFORE HAS ORIGINAL
   JURISDICTION OVER THIS ACTION……………………………………..24

CONCLUSION………………………………………………………………..32

CERTIFICATE OF SERVICE……………………………………………….......33

## BLUE CROSS AND BLUE SHIELD OF ALABAMA'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

Defendant Blue Cross and Blue Shield of Alabama ("Blue Cross") respectfully files this response in opposition to Plaintiffs' Motion to Remand.

## INTRODUCTION & SUMMARY

Plaintiffs the Alabama Dental Association, Dr. Lew Mitchell and Dr. James Sanderson bring state law putative class claims associated with services rendered to patients whose health benefits are insured or administered by Blue Cross. Among the allegations in the complaint, Plaintiffs assert that Blue Cross diverges from applicable standards of dental necessity and denies claims based on cost criteria (Compl. ¶ 12); intentionally delays payment of claims beyond the time provided for by the State of Alabama and allotted in provider and subscriber contracts (Compl. ¶¶ 22, 25); and misrepresents the terms of coverage for services provided by both in-network and out-of-network dentists (Compl. ¶¶ 37-40). The Complaint clearly sets out that Plaintiffs are suing in their capacity as in-network dentists who entered into contracts with Blue Cross and out-of-network dentists who stand as third party beneficiaries to contracts entered into between subscribers (patients) and Blue Cross. (Compl. ¶¶ 6(a)–(b), 11, 53–54).

Plaintiffs did not exclude from their complaint claims relating to services to enrollees in plans that Blue Cross administers under the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. §1001 *et. seq.*, or plans that Blue Cross insures or administers for federal government employees and retirees, known as the "Service Benefit Plan." These plans are governed by federal statutes. The Service Benefit Plan is also governed by government contracts and is comprehensively regulated by a federal agency.

The Court should deny the Motion to Remand for three reasons: (1) Plaintiffs' claims

raise federal questions because they "relate to" the administration of employee welfare benefit plans under, and thus are completely preempted by, ERISA; (2) the claims raise federal questions because they are completely preempted by the federal statute governing the Service Benefit Plan – namely, the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §8901 – 8914; and (3) the claims are removable under 28 U.S.C. §1442(a)(1), which permits private parties acting under the direction of federal agencies and officers to remove state law claims.

## FACTUAL AND REGULATORY BACKGROUND

A.    *The Majority of Blue Cross Subscribers Receive Health Benefits Coverage Under ERISA Plans.*

Blue Cross is an Alabama not-for-profit corporation that is organized for the purpose of managing health care plans, many of which are established and maintained by employers to provide medical, surgical, or hospital care or benefits to their employees. Such plans are governed by ERISA. Approximately 70% of Blue Cross's members receive their health benefits coverage under ERISA plans insured or administered by Blue Cross. *Caudle Aff.*, attached to Notice of Removal as Exhibit " F ". [1]

Blue Cross has entered into a Participating Dentist Agreement ("the Agreement", attached hereto as Exhibit "A") with certain dentists, including Plaintiff Mitchell, who agree to provide dental services to participants in the health benefits plans insured or administered by Blue Cross which provide Preferred Dental coverage benefits. Pursuant to the Agreement, participating dentists complete and file claims for dental services rendered to those patients with Preferred Dental coverage directly with Blue Cross and, in turn, Blue Cross pays those claims in

---

[1]  Plaintiffs inexplicably claim in their Motion to Remand that Blue Cross failed to give the Court an indication of the number of Blue Cross subscribers covered under ERISA plans. The Caudle Affidavit attached to the Notice of Removal clearly establishes this fact. Moreover, it is well-established that a removing defendant is not required to attach every piece of available evidence supporting removal to the petition itself. To the contrary, a removal petition is "required to contain only a 'short and plain statement of the facts'" supporting removal. *Perkins v. Mississippi,*

accordance with the terms of the subscribers' Benefit Agreement directly to the dentist.[2]
*Agreement,* ¶ 4.8, 4.10, 5.1.  The Agreement provides in relevant part:

> Dentist agrees to provide to each Member the Dental Services **for which benefits are provided by the Benefit Agreement under which the Member is covered only when and to the extent that such Services are Medically/Dentally Necessary…Dentist agrees to make no charge for Dental Services except to the extent permitted by this Agreement and the Member's Benefit Agreement…Payment for any procedure will be dependent on whether the procedure is Medically/Dentally Necessary in the circumstances and within the terms of the Benefit Agreement** under which the Member receiving the Service is covered.

*Id.*,  ¶¶ 4.3, 4.5(emphasis added).[3]

Approximately 55 percent of the claims submitted by Dr. Mitchell to Blue Cross for payment during the period of January 1, 2004 through December 31, 2005 were claims submitted on behalf of members of ERISA plans.  *Smith Aff.*, ¶ 8.  Attached as Exhibit "2" to that Affidavit are representative samples of claim forms submitted by Dr. Mitchell to Blue Cross for payment which reflect his patient's assignment of the right to payment for the claim.

Plaintiff James Sanderson does not have an Agreement with Blue Cross and is a non-participating dental services provider.  Blue Cross does not prohibit payment of dental claims directly to non-participating providers pursuant to the subscriber's assignment of benefits so long as (1) the subscriber's health benefits plan does not have the Preferred Dental coverage benefit and (2) the provider has never withdrawn or been terminated by Blue Cross as a participating

---

455 F.2d 7, n. 35 (5th Cir. 1972)(*quoting* 28 U.S.C. Section 1446).

[2]  If the subscriber's health benefits plan does not provide for Preferred Dental benefits coverage, Blue Cross will accept the claim from either the subscriber or the participating dentist pursuant to the assignment of benefits from the subscriber, and may elect to pay either the subscriber or the participating dentist for that claim pursuant to the terms of the subscriber's plan.  *Affidavit of Sandra Smith at ¶ 2* attached hereto as Exhibit "B".

[3]  The Agreement defines "Benefit Agreement" as the "written agreement entered into by Corporation with a group or organization or person under which Corporation provides, indemnifies against or administers dental care benefits…"  *Agreement*, ¶ 2.2.

dentist.[4]  *Smith Aff.*, ¶ 3.  Blue Cross pays claims it receives for  services performed by Dr. Sanderson directly to the subscriber because Dr. Sanderson ceased participation as a participating dentist in 1997.  *Id., ¶  4* .  Nevertheless, approximately 74 percent of claims submitted for payment for services provided by Dr. Sanderson were submitted on behalf of Blue Cross subscribers with coverage under an ERISA plan.  *Id.,* ¶  5.  Plaintiff Sanderson is, by his own admission in the Complaint, a third-party beneficiary of his patients' right to payment for dental services under the terms of each patient's benefits plan.  (Compl. ¶¶ 54-55).

      B.    *The FEHBA Program*

Also among the subscribers whose benefits Blue Cross administers and insures are enrollees in enrollees in the federal government's Service Benefit Plan.  *See* Affidavit of Sandra Smith ¶¶ 6, 9.  Because Plaintiffs sue to collect for services to Blue Cross subscribers, without any exclusion for these (or any other) subscribers, payments for services to individuals in the Service Benefit Plan are likewise at issue in this case.  We therefore briefly discuss at the start the regulatory framework controlling the Service Benefit Plan.

      1.    <u>*The Service Benefit Plan*</u>.  Congress enacted a statute entitled the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. § 8901-8914 in 1959 to provide "a measure of protection for civilian Government employees against the high, unbudgetable, and, therefore, financially burdensome costs of medical services through a comprehensive government-wide program of insurance for federal employees."  H.R. Rep. No. 86-957, at 1

---

[4]    In the Motion to Remand, Plaintiffs admit that in the Complaint they "purporte[d] to be an assignee of a participant or beneficiary (as to the out-of-network dentists)…in terms of payment."  *Motion to Remand*, pp. 16-17.  Plaintiffs next assert, without providing any evidentiary or other support, that "BCBS enrollees are prohibited from assigning claims to out-of-network dentists.  As such, the out-of-network dentists do not have standing to sue under the ERISA statute."  *Id.*  As set forth in the affidavit of Sandra Smith, this unsupported statement by the Plaintiffs is inaccurate.  Blue Cross will, in fact, pay non-participating dentists directly pursuant to an assignment of benefits by the patient so long as the patient's health benefits plan does not have Preferred Dental benefits and the dentist has not withdrawn or been terminated as a participating dentist.  *Smith Aff.*, ¶ 3.

(1959), *reprinted* in 1959 U.S.C.C.A.N. 2913, 2914. To achieve these goals, FEHBA delegates

expansive authority to the U.S. Office of Personnel Management ("OPM") to create and regulate

health benefits plans for federal employees and their retirees and their dependents. The statute

"'gives OPM the authority to administer the program by contracting with qualified private

carriers to offer a variety of health care plans, 5 U.S.C. § 8902, by distributing information on the

available plans to eligible employees, [5 U.S.C.] § 8907, by promulgating necessary regulations

[5 U.S.C.] § 8913, and by interpreting the plans to determine the carrier's liability in an

individual case, [5 U.S.C.] § 8902(j).'" *Muratore v. United States OPM*, 222 F.3d 918, 920

(11th Cir. 2000) (quoting *Kobleur v. Group Hosp. & Med. Servs.*, 954 F.2d 705, 709 (11th Cir.

1992)) (brackets in original).

One plan for which OPM has contracted is the Service Benefit Plan, a nationwide fee-for-

service plan expressly described in FEHBA. 5 U.S.C. § 8903(1). OPM contracts with the Blue

Cross and Blue Shield Association ("the Association") to provide the Service Benefit Plan. In

signing the contract, the Association acts on behalf of the local Blue Cross and Blue Shield

companies who administer the Plan in their respective localities. Blue Cross administers the

Service Benefit Plan in Alabama. *See* 2002 Service Benefit Plan Master Contract and

Amendments (Exh. A to Notice of Removal) [hereinafter "2002 CS 1039"]; 2005 Statement of

Benefits for the Service Benefit Plan at 4 (Exh. B to Notice of Removal) [hereinafter "2005

Statement of Benefits"].

Federal employees do not enter into a contract for health benefits with Blue Cross (or the

Association), but instead enroll in the Service Benefit Plan pursuant to OPM's regulations. 5

U.S.C. § 8905(a); 5 C.F.R. §§ 890.101(a), 890.102-.104, 890.301(d) and subparts C, D, and K.

Once federal employees have elected to enroll in the Service Benefit Plan, they receive benefits

under the terms of the government contract between OPM and the Association.  The government

pays the majority of the premium, with the enrollee paying the rest.  5 U.S.C. §§ 8906, 8909(a).

2.    *Contract and Plan Terms and Limitations*.  Of particular relevance to this

case are terms in the OPM-Association contract concerning the timing for paying claims and the

coding of claims. Under that regime, Blue Cross need only pay within a "reasonable time after

receipt of reasonable proof covering the occurrence, character, and extent of the event for which

the claim is made." 2002 CS 1039 § 2.3(b).   Additionally, the contract explicitly provides

standards on the "Timeliness of Payments to Members or Providers" whereby the Plan's goal

must be to adjudicate 87% of claims within 28 calendar days, 92% within 42 calendar days, and

97% of claims with 84 calendar days, leaving 3% for a longer period. *Id.* § 1.9(b)(2)(ii).  On the

coding of claims, the contract requires that "98 percent of FEHB claims shall be coded

accurately." *Id.* § 1.9(b)(2)(i)(B).

The OPM-Association contract also incorporates a document known as the "Statement of

Benefits," or brochure.  *See* OPM-Association Contract § 2.2.   In this respect, among its

obligations, OPM must issue to each enrollee a "detailed statement of benefits offered and shall

include such maximums, limitations, exclusions, and other definitions of benefits as [OPM]

considers necessary or desirable."   5 U.S.C. § 8902(d); *see also* 5 U.S.C. § 8907(a).   The

Statement of Benefits is the official description of benefits and other Plan terms "contain[ed]" in

the contract. 5 U.S.C. § 8902(d); *see St. Mary's Hosp. v. CareFirst of Md., Inc.*, 192 F. Supp. 2d

384, 386 (D. Md. 2002).  Among its terms pertinent here, the Statement of Benefits details the

Dental benefits available under the Service Benefit Plan.  2005 Statement of Benefits at 88-93.

The Statement of Benefits lists the covered dental services and sets forth maximum, fixed

amounts Blue Cross will pay for them.  *Id.* at 89-92.  The Statement of Benefits also specifies

that benefits shall be paid only for services that are "medically necessary to prevent, diagnose, or treat [an] illness, disease, injury, or condition" and contains a detailed definition of medical necessity. *See id.* at 97, 112.

        3.    *OPM's Police Power over Carriers.* Pursuant to its authority under 5 U.S.C. §§ 8902(e) and 8913(a), OPM has promulgated detailed regulations governing the conduct and business practices of FEHBA carriers. *See* 48 C.F.R. Chapter 16. Under these regulations, carriers "must perform the contract in accordance with prudent business practices," which include compliance with legal and ethical business and health care standards, conformity with the terms of the FEHBA contract, regulations, and statutes, and timely and accurate provision of benefits. 48 C.F.R. § 1609.7001(b). OPM has authority to penalize a carrier and to order appropriate corrective action where the carrier displays a "pattern of poor conduct or evidence of misconduct," such as "[u]sing fraudulent or unethical business or health care practices or otherwise displaying a lack of business integrity or honesty" or "[f]ail[ing] to assure that the plan provides properly paid or denied claims." *Id.* § 1609.7001(c)-(d).

        4.    *OPM's Administrative Review Procedures and Subsequent Litigation.* Under FEHBA, each contract that OPM enters must require the carrier "to pay for or provide a health service or supply in an individual case" if OPM "finds that the employee . . . is entitled thereto under the terms of the contract." 5 U.S.C. § 8902(j). OPM has implemented this provision by establishing a mandatory administrative remedy at the agency for those who believe that the carrier has wrongfully denied benefits. 5 C.F.R. § 890.105; *see also id.* § 890.107(d)(1). This right of administrative review is available "to covered individuals and to other individuals or entities who are acting on behalf of a covered individual and who have the covered individual's specific written consent to pursue payment of the disputed claim." *Id.* §

890.105(a)(2).

OPM's regulations also provide that any court litigation over benefits may only be brought as an action against the agency for judicial review, after exhaustion of the administrative remedy. See 5 C.F.R. § 890.107(c), (d)(1). The regulations expressly state that litigation "must be brought against OPM and not against the carrier or carrier's subcontractors." *Id.* "[T]he recovery in such a suit shall be limited to a court order directing OPM to require the carrier to pay the amount of benefits in dispute." *Id.* § 890.107(c).

This federal remedial scheme is likewise outlined in detail in the Service Benefit Plan's Statement of Benefits. *See* 2005 Statement of Benefits at 102; *Id.* Like the regulations, the Statement of Benefits provides that the federal remedy is available to enrollees or their assignees, including providers. *See id.* (allowing "medical providers" to pursue OPM appeal with enrollee's "specific written consent"). The Statement of Benefits also states: "Federal law governs your lawsuit, benefits, and payment of benefits." *Id.*

     5.     *FEHBA's Preemption Provision*. FEHBA contains an express preemption provision, codified at 5 U.S.C. § 8902(m)(1). As amended in 1998, the preemption provision currently provides:

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits shall supersede and preempt any State or local law, or any regulation issue thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1) (2000) (codifying Federal Employees Health Care Protection Act of 1998, Pub. L. No. 105-266, § 3(c), 112 Stat. 2363 (1998)).

## ARGUMENT

Because the Plaintiffs address removal jurisdiction under FEHBA first and then ERISA, we do the same here. Nonetheless, if the Court finds that it has jurisdiction over any category of

claims (FEHBA *or* ERISA), it can exercise jurisdiction over the entire case. *See* 28 U.S.C. §§ 1367, 1441(c).

**I.    THE COURT HAS REMOVAL JURISDICTION BECAUSE OF THE CLAIMS FOR PAYMENTS FOR SERVICES TO FEHBA SUBSCRIBERS**

**A.    THE COURT HAS REMOVAL JURISDICTION BECAUSE FEHBA COMPLETELY PREEMPTS PLAINTIFFS' STATE LAW CLAIMS**

The claims involving FEHBA enrollees are removable because they are "completely preempted" and thus raise federal questions. Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant" to the appropriate district court. The district courts, in turn, have original jurisdiction over all civil actions raising federal questions. *See* 28 U.S.C. § 1331. In many instances, a complaint raising only state law claims can avoid federal jurisdiction, because the federal courts' jurisdiction, under the "well-pleaded complaint rule," "must be determined from what necessarily appears in the plaintiff's statement of his own claim in the bill or declaration." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9, 10 (1983) (internal quotation marks omitted).

There is, however, an exception known as "the 'complete pre-emption' doctrine." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987). It applies when the preemptive force of a federal cause of action is so "extraordinary" as to "convert[] an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987); *accord Beneficial Nat'l Bank v. Anderson*, 123 S. Ct. 2058, 2063 (2003).

FEHBA is a statute that courts in this Circuit and elsewhere have repeatedly found to completely preempt state law claims seeking benefits. *E.g.*, *Carter v. Blue Cross & Blue Shield*

*of Fla.*, 61 F. Supp. 2d 1237, 1240-41 (N.D. Fla. 1999) (contract and fraud claims); *see also Botsford v. Blue Cross and Blue Shield of Mont.*, 314 F.3d 390 (9th Cir. 2002) (misrepresentation claim); *St. Mary's Hosp. v. CareFirst of Md., Inc.*, 192 F. Supp. 2d 384, 387-390 (D. Md. 2002) (contract and quantum meruit claims); *Rievley v. Blue Cross Blue Shield of Tenn.*, 69 F. Supp. 2d 1028, 1031-37 (E.D. Tenn. 1999) (contract and tort claims); *Kight v. Kaiser Found. Health Plans of Mid-Atlantic States, Inc.*, 34 F. Supp. 2d 334, 337-40 (E.D. Va. 1999) (medical malpractice claim). Courts have found jurisdiction based on complete preemption not just where plan enrollees have sued, but also where providers have sued FEHBA plans. *See, e.g., St. Mary's Hosp.*, 192 F. Supp. 2d 384 (provider without an assignment); *LPMG, Inc. v. Blue Cross and Blue Shield of Fla., Inc.*, No. 03-61668-CIV-MARTINEZ-KLEIN, Magistrate's Report & Recom., at 9 (S.D. Fla. Dec. 2, 2003) (attached hereto Exh. "C") (provider suit based on assignment); *Lieberman v. Nat'l Postal Mail Handlers Union*, 819 F. Supp. 344, 349 (S.D.N.Y. 1993) (same); *Federal Plaza Medical Assocs., P.C. v. Palermino*, 1991 U.S. Dist. LEXIS 2167, *15-*16 (S.D.N.Y. February 22, 1991) (same).

Plaintiffs' statement that neither the Supreme Court nor the Eleventh Circuit has adopted a specific test for determining whether a federal statute completely preempts state law is simply wrong. *See* Mot. to Remand at 6. Plaintiffs apparently are unaware of the Supreme Court's decision in *Beneficial National Bank*, which (in a case originating in the Eleventh Circuit) now sets forth the general test governing complete preemption and which found complete preemption under the National Bank Act. The Supreme Court held that the "proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive." *Beneficial Nat'l Bank*, 123 S. Ct. at 2064 n.5; *see also Aetna Health Inc. v. Davila*, 124 S. Ct. 2488 (2004) (applying complete preemption test in ERISA setting).

10

The courts that previously have found complete preemption and thus removal jurisdiction under FEHBA have so held because the FEHBA statutory and regulatory scheme contains just such an exclusive federal remedy for all grievances concerning the payment of FEHBA benefits. Pursuant to Congressional directive (*see* 5 U.S.C. § 8902(j)), OPM – the federal agency that "superintends" FEHBA (*Burkey v. Gov't Employees Hosp. Ass'n*, 983 F.2d 656, 658 (5th Cir. 1993)) – has established a mandatory administrative process at the agency for all such grievances. 5 C.F.R. § 890.105. The remedy is available not just to aggrieved enrollees, but also to providers acting on their behalf. *See id.* § 890.105(a)(2). After completing the administrative process, the aggrieved party's only recourse (if he or she is not satisfied with the result in the administrative process) is to sue OPM in federal court, with the relief being limited to "a court order directing OPM to require the carrier to pay the amount of benefits in dispute." *Id.* § 890.107(c). OPM's regulations provide expressly that litigation "must be brought against OPM and not against the carrier or carrier's subcontractors." *Id.* This administrative remedy (with subsequent judicial review) is the "only" remedy available for disputes involving FEHBA benefits. *Bryan v. Office of Personnel Mgmt.*, 165 F.3d 1315, 1318 (10th Cir. 1999).

The courts have also found that FEHBA completely preempts state law complaints because Congress expressly addressed the issue of preemption and federal jurisdiction in amendments to the FEHBA statute in 1998. Prior to 1998, the courts were divided over whether FEHBA completely preempts state law. *See Rievley*, 61 F. Supp. 2d at 1033 (noting history of case law under FEHBA). To end the judicial debate, Congress expanded the existing preemption clause in FEHBA. As now in force, FEHBA's preemption section provides that federal contract terms concerning benefits shall preempt all state law claims that "relate[] to health insurance and plans." 5 U.S.C. § 8902(m)(1) (2000). Now gone is earlier, narrowing language that had

authorized preemption only where state law was "inconsistent" with FEHBA contract terms.  *See* 5 U.S.C. § 8902(m)(1) (1994).  Congress made this change in order to "confirm" that FEHBA program "contract terms which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) *completely displace* State or local law relating to health insurance or plans" and to "strengthen the case for trying FEHB program claims disputes in Federal courts rather than State courts."  H.R. Rep. No. 105-374, at 9, 16 (1997) (Exh. C to Notice of Removal) (emphasis added).  Because Congress's intent is always the "touchstone" for federal jurisdiction, *Metropolitan Life Insurance Co.*, 481 U.S. at 66, Congress's instruction that FEHBA shall "completely displace" state law and that claims disputes should be tried "in Federal courts" is strong indication that FEHBA completely preempts state law.

    For these reasons, Plaintiffs' reliance on the aberrant decision in *Ramirez v. Humana, Inc.*, 119 F. Supp. 2d 1307 (M.D. Fla. 2000), is misplaced.  *See* Mot. to Remand at 4.  The *Ramirez* court found that Congress had not sufficiently manifested an intent to make FEHBA cases removable.  But *Ramirez* has been widely criticized as overlooking the salient parts of the legislative history to Congress's amendments in 1998, and the *Ramirez* court's holding has been specifically rejected by subsequent courts.  *E.g.*, *LPMG, Inc.*, No. 03-61668-CIV-MARTINEZ-KLEIN, at 9 (rejecting Plaintiffs' reliance on *Ramirez*, finding "the [Northern District of Florida's] *Carter* decision represents the better view on the issue of super preemption."); *see also Botsford*, 314 F.3d at 399 n.52; *Doyle v. Blue Cross Blue Shield of Ill.*, 149 F. Supp. 2d 427, 433 (N.D. Ill. 2001); *St. Mary's Hosp.*, 192 F. Supp. 2d at 388 n.2.  This Court should follow these other courts and hold that FEHBA likewise completely preempts similar provider claims in this case.

Finally, the courts have found complete preemption in FEHBA cases in order to carry out FEHBA's objective of uniformity. The "purpose of FEHBA's preemption provision is to ensure nationwide uniformity of the administration of FEHBA benefits." *Carter*, 61 F. Supp. 2d at 1243. Application of state law to FEHBA claims would undermine this Congressionally-desired uniformity by "creating a 'patchwork quilt' of benefits that 'varied from state to state under the same contract.'" *St. Mary's Hosp.*, 192 F. Supp. 2d at 388 (quoting *Caudill v. Blue Cross and Blue Shield of North Carolina*, 999 F.2d 74, 79 (4th Cir. 1993)); *cf. Davila*, 524 U.S. at 209 (state-law claims threaten uniformity of ERISA and are therefore completely preempted). Federal jurisdiction brings with it the "experience, solitude, and hope of uniformity that a federal forum offers on federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g*, 125 S. Ct. 2363, 2367 (2005).

Consistent with the case law on FEHBA complete preemption, the Court should hold that FEHBA completely preempts Plaintiffs' claims. Their suit amounts to an action to obtain FEHBA benefits where it seeks payment for services to FEHBA enrollees. Plaintiffs allege that, rather than pay based on "medical necessity" or based on the other applicable coverage terms, Blue Cross uses impermissible cost criteria; they also allege that Blue Cross uses improper coding practices to deny and delay providers their rightful payment. *See e.g.* Compl. ¶¶ 12 and 22. Plaintiffs pursue all of these allegations "pursuant to either contract *or as assignees of their patients' claims*," *see* Compl. ¶¶ 8, 9 (emphasis added). Provider claims, particularly when based on assignments, are, again, no less subject to OPM's exclusive administrative remedy and to complete preemption than claims brought directly by enrollees.

In particular, with respect to non-participating providers, Plaintiffs overtly sue for breach of the subscriber agreements, asserting that higher and quicker payments are required by those

agreements.  *See* Compl. ¶¶ 11, 35, 54-55.  And they assert that Blue Cross misrepresented the terms of the subscriber agreements.  *Id.* ¶ 37.  In the context of FEHBA subscribers, the subscriber agreement is the Service Benefit Plan itself.  "'A claim for breach of contract is, of course, cognizable under the FEHBA's enforcement procedures'" and therefore is completely preempted.  *Rievley*, 69 F. Supp. 2d at 1036 (quoting *Bridges v. Blue Cross & Blue Shield Ass'n*, 935 F. Supp. 37, 43 (D.D.C. 1995)).  And with respect to the misrepresentation allegations (at least with respect to the non-participating providers), the Court cannot determine whether Blue Cross misrepresented the terms of payment in subscriber agreements without parsing the subscriber agreement (here, the Service Benefit Plan itself) as well.  That is, the Court cannot determine the truth or falsity of Blue Cross' alleged statements regarding compensation without "resorting to the written policy and assessing the truth" of Blue Cross' representations as against the subscriber agreement.  *Hall v. Blue Cross/Blue Shield of Alabama*, 134 F.3d 1063, 1065 (11th Cir. 1998) (decided under ERISA); s*ee also Carter*, 61 F. Supp. 2d at 1245 (applying *Hall* to case decided under FEHBA).  Any claim that focuses on interpretation or enforcement of the terms of the subscriber agreement (*i.e.*, the Service Benefit Plan's terms) is necessarily completely preempted and subject to federal jurisdiction, because the Plan terms must be subject to nationally uniform interpretation.  *See St. Mary's Hosp.*, 192 F. Supp. 2d at 390 ("To allow state contract law to decide the matter would disrupt the national uniformity of coverage for federal employees intended by Congress in enacting FEHBA").

Even with respect to Plaintiffs' claims on behalf of in-network providers under the in-network provider agreements, these claims necessarily involve the interpretation of the subscribers' agreement (here, the Service Benefit Plan) and therefore are completely preempted. In *St. Mary's Hosp.* the Court held that a provider's claims based on its own provider contract

with CareFirst, a Blue Cross Blue Shield entity, were completely preempted and thus removable. The issue in the case was whether CareFirst had wrongfully denied payment for "medically necessary" services. Because the provider contract required payment only "'in accordance with the type of coverage program held by the member,'" the court found that the definition of "medical necessity" in the Service Benefit Plan actually governed the result under the provider contract. *Id*. at 389 (quoting provider contract). Because a claim that otherwise appeared on its face to be independent of the Service Benefit Plan nonetheless "necessarily implicate[d] the terms and provisions of the [Service Benefit Plan]," the court held that the contract claims were completely preempted by FEHBA. *Id*; *accord Radiology Assocs. of San Antonio v. Aetna Health Inc.*, 2005 U.S. Dist. LEXIS 3749 (W.D. Tex. Mar. 2, 2005) (ERISA context).

In this case, the in-network agreement relating to Plaintiffs, like the agreement in *St. Mary's*, provides that payment must be in accordance with the terms of the enrollees' subscription agreements. *See* Preferred Dentist Agreement, § 6.2, at 11 (Exhibit A to Motion to Remand). Therefore, when the complaint sues for violation of "medical necessity" provisions or other matters (or any other matters relevant to the subscriber agreement), even the in-network providers' breach-of-provider contract claims implicate the terms of the Service Benefit Plan, thereby requiring complete preemption. *See* 2005 Statement of Benefits at 112 (Service Benefit Plan's definition of "medical necessity").

In the Motion to Remand, Plaintiffs seek to avoid FEHBA complete preemption by asserting now that they are not suing as assignees of the FEHBA plan beneficiaries as originally pled in the Complaint. *See* Mot. to Remand at 9. Instead, they claim that *any* assignment is prohibited either by their own contracts with Blue Cross or by the Service Benefit Plan's terms. *Id*. As an initial matter, Plaintiffs cannot avoid removal by altering their allegations through a

post-Complaint pleading since removal based on a federal question is based on the well-pleaded allegations on the face of a plaintiff's complaint, rather than any statements made subsequently. *In re Carter*, 618 F.2d 1093, 1101 (5th Cir. 1980). Even if Plaintiffs could alter the face of their Complaint, however, their attempt to evade removal would still fail. *See* Mot. to Remand at 9. The anti-assignment provision contained in the Provider Agreement pointed to by Plaintiffs does not preclude a subscriber from assigning a claim to a provider. Rather, that provision only serves to bar a provider from assigning his rights under the network agreement to another. *See* Preferred Dentist Agreement with Blue Cross and Blue Shield of Alabama, § 11.1, at 17 (Exh. A to Motion to Remand). Additionally, this provision cannot possibly apply to out-of-network providers, who are not governed by the in-network agreement, and Plaintiffs offer no support for the assertion Blue Cross prohibits assignments by out-of-network providers, *see* Mot. to Remand at 9.

Furthermore, the presence or absence of an assignment is not dispositive for FEHBA complete preemption. As noted in *St. Mary's Hosp.* and other cases, the critical issue is whether the claims focus on or reference the Service Benefit Plan's terms. *St. Mary's Hosp.*, 192 F. Supp. 2d at 390; *see also Radiology Assocs*, 2005 U.S. Dist. LEXIS 3749, at *28 ("[P]resence or absence of assignments, however, is not the critical factor . . . The determinative element is the dependence or independence" of the claim to the benefits plan.). The fact that a provider lacks or disavows an assignment "does not compel the Court to allow Plaintiff to proceed with its state law claims, however. To do so would create a perverse incentive for health care providers to forego assignments of rights in order to skirt OPM review and seek possibly more lucrative state remedies." *St. Mary's Hosp.*, 192 F. Supp. at 390.

**B.    THE COURT HAS REMOVAL JURISDICTION OVER THE CLAIMS INVOLVING FEHBA ENROLLEES UNDER 28 U.S.C.§ 1442(a)(1)**

Removal jurisdiction over the claims involving services to Service Benefit Plan enrollees also is proper under the special removal authority in 28 U.S.C. § 1442(a)(1), which is sometimes referred to as the "federal officer removal statute." That section provides that a state action "may be removed" by "[t]he United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." *Id.* (emphasis added).

As the statutory language imparts, "the reach of section 1442(a)(1) extends to private persons . . . who act under the direction of federal officers." *Camacho v. Autoridad de Telefonos*, 868 F.2d 482, 486 (1st Cir. 1989). The statute is "'an incident of federal supremacy,'" has "broad application," and is not to be given a "'narrow, grudging interpretation.'" *Peterson v. Blue Cross/Blue Shield*, 508 F.2d 55, 58 (5th Cir. 1975) (quoting *Willingham v. Morgan*, 395 U.S. 402, 405 (1969)); *accord Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996). Under section 1442(a)(1), the well-pleaded complaint rule has no bearing: a case is removable even if federal law arises only by way of a defense. *See Mesa v. California*, 489 U.S. 121, 136-37 (1989); *see also Magnin*, 91 F.3d at 1427 ("the right of removal is absolute whenever a suit in a state court is for any act under color of federal office, regardless of whether the suit could originally have been brought in a federal court").

For removal to be proper under section 1442(a)(1), there are three requirements: (1) the defendant must show that it acted under the direction of a federal officer; (2) the defendant must show a causal nexus between the claims against it and acts it performed under color of federal office; and (3) the defendant must raise a "colorable" federal defense to the claims against it. *Mesa*, 489 U.S. at 124-25; *see also Magnin*, 91 F.3d at 1427-28. With respect to the third

17

requirement, the defense advanced need only be "plausible"; "its ultimate validity is not to be determined at the time of removal." *Magnin*, 91 F.3d at 1427.

Applying these standards, the Eleventh Circuit has expressly permitted removal by FEHBA carriers under § 1442(a)(1).  *See Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross Blue Shield of Fla., Inc.*, No. 03-15664, slip op. at 4-5 (11th Cir. Mar. 18, 2005) (Exh. E to Notice of Removal) [hereinafter "*AAOT*"].  Recently, Judge Bowdre followed *AAOT* in finding a complaint very similar to the one filed here to be subject to removal under the federal officer removal statute.  *Howard v. Blue Cross Blue Shield of Alabama*, CV-05-BE-1894-S (N.D. Ala. Nov. 22, 2005) (Exh. D to Notice of Removal).  Other courts in this Circuit and courts elsewhere (including the Fifth Circuit prior to 1981) have repeatedly permitted removal by government contractors administering various federal health plans or programs.  *Peterson*, 508 F.2d at 57-58 (carrier administering Medicare program sued for excluding provider from program); *Thompson v. Community Ins. Co.*, 1999 U.S. Dist. LEXIS 21725, at *6-*28 (S.D. Ohio Mar. 3, 1999) (HMO administering Medicare HMO plan sued for canceling coverage); *Holton v. Blue Cross & Blue Shield of S.C.*, 56 F. Supp. 2d 1347, 1351-52 (M.D. Ala. 1999) (carrier administering health benefits plan for dependents of military personnel sued under state contract and tort law for denial of benefits); *Group Health, Inc. v. Blue Cross Ass'n*, 587 F. Supp. 887, 890-91 (S.D.N.Y. 1984) (carrier administering Medicare program sued for supposedly wrongful denial of reimbursement to provider).

Plaintiffs' Complaint fits the requirements for removal under section 1442(a)(1).  With respect to the first requirement, Blue Cross acts under the direction of a federal agency and its officers.  The Eleventh Circuit in *AAOT* stated in very broad terms that "[a] health insurer contracting with a government agency under a federal benefits program is considered a 'person

acting under' a federal officer." *AAOT*, slip op. at 4. Citing its decision in *Muratore*, 222 F.3d 918, the Eleventh Circuit in *AAOT* emphasized the overarching control OPM has over the FEHBA program, from administering the program, to distributing information about it, to exercising regulatory authority, to adjudicating a carrier's liability in individual cases through the agency's administrative enforcement remedy. *AAOT*, slip op. at 4; *see also Muratore*, 222 F.3d at 920 (stating that FEHBA is "a *comprehensive* program of subsidized health care benefits for federal employees and retirees") (emphasis added). Here, the matters at issue fit comfortably within the areas over which OPM exercises supervisory authority – namely, the payment or denial of claims, the time period for payment, claims coding, and the application of the medical necessity definition. On this basis, Plaintiffs challenge actions under the direction of federal officers.

In their motion, Plaintiffs suggest that more is necessary to meet the requirements of §1442(a)(1) than the existence of a federal agency who closely superintends the matters in issue. Plaintiffs instead assert that their action does not arise from "procedures dictated by the OPM." Mot. to Remand at 11. But that is not the law. The courts have emphasized that, in order for removal to be upheld, "[t]he Defendant need not have acted pursuant to a direct order. . . . It is sufficient for purposes of federal officer removal jurisdiction if the acts underlying the Plaintiffs' lawsuit were performed pursuant to comprehensive and detailed regulations." *Thompson*, 1999 U.S. Dist. LEXIS 21725, at *20; *see generally Magnin*, 91 F.3d at 1427-28 ("it is sufficient for the defendant to show that his relationship to the plaintiff 'derived solely from [his] official duties'"; he need only show that "he acted within the scope of his federal duties") (quoting *Willingham,* 395 U.S. at 409); *Commonwealth of Pa. v. Newcomer*, 618 F.2d 246, 250 (3d Cir. 1980) ("We recognize that the facts of this case are one step removed from a prosecution

specifically for conduct explicitly required by the defendant's federal office . . . . However, we believe that the liberal construction to be afforded the statute . . . compel[s] our result in this case."). As one district court has put it in a similar context: "The actions at issue here were taken in Blue Cross's role as fiscal intermediary. Those actions thus were taken under color of the office of the Secretary of HHS, regardless of whether Blue Cross should have consulted with, or did consult, HHS before giving the advice." *Group Health Inc.*, 587 F. Supp. at 891.

Even if a directive from OPM was necessary, OPM *has* issued specific directions concerning the areas covered by Plaintiffs' allegations. For instance, in the OPM-Association contract, OPM has established specific time frames for processing of claims submitted by "Members *or Providers*." 2002 CS 1039 § 1.9(b)(2)(ii) (Exh. A to Notice of Removal) (emphasis added). The Blue Cross and Blue Shield entities must pay them within a "reasonable" period after submission, *see id.* § 2.3(b), with the goal of paying 87% of claims within 24 days, 92% of claims within 48 days, and 97% of claims within 84 days, leaving 3% for a longer period, *see id.* § 1.9(b)(2)(ii). In the Complaint, Plaintiffs seek to hold Blue Cross liable for "average payment times [that] exceed by multiples the time provided for by the State of Alabama . . . ." Compl. ¶ 25. Thus, Plaintiffs seek to hold Blue Cross liable under a state law standard for conduct expressly authorized by OPM in the contract. Under these circumstances, the requirement that Blue Cross be a person acting under the direction of a federal officer or agency is plainly satisfied.

These facts put this case on all fours with the two other decisions in this Circuit involving § 1442(a)(1) and FEHBA carriers. In *AAOT*, the provider sued under state law to challenge the Florida Blue Cross and Blue Shield entity's refusal to pay providers directly when they had obtained an assignment from a Service Benefit Plan enrollee. The Eleventh Circuit upheld

removal, because the federal contract expressly provided that, even with an assignment to the provider, the carrier could exercise its discretion to pay the member. *See* 2005 Statement of Benefits at 110.  The Eleventh Circuit said:

> AAOT's suit is based on BCBS's failure to reimburse it for services allegedly covered by the plans. Each FEHBA-covered plan is governed by a contract negotiated and interpreted by OPM, with which BCBS is compelled to comply. Any duty to pay for health services arises from the terms of the plan itself. **Moreover, the plan terms explicitly give BCBS the option of reimbursing the participant, rather than the provider. Thus, AAOT has essentially complained about actions performed under the authority of a federal officer or agency, here OPM.**

*AAOT*, slip op. at 5 (emphasis added).  Just as the carrier in *AAOT* was acting "under the authority of a federal officer or agency" because the government contract permitted the carrier to pay the provider directly, so too is Blue Cross here acting under the authority of a federal agency or officer because the government contract permits it to pay provider claims under a different, even later, timeframe than does state law.[5]

The claims involved in the district court's decision in *Howard* were also similar.  There, the complaint focused on alleged delays in payments; improper application of "medical necessity" criteria; and misrepresentations regarding payments to providers.  Plaintiffs allegations in this lawsuit are similar, if not identical, to the claims in *Howard*, and Plaintiffs offer no basis to distinguish the case.  Rather, they note Judge Bowdre's invitation for the MDL to reconsider her opinion.  Notwithstanding this invitation, her holding was that the claims were removable under the federal officer removal statute, and the MDL has not reversed or even

---

[5] Though Plaintiffs try to distinguish *AAOT* as a decision in which the claims were based on an assignment,  Mot. to Remand at 12-13, Plaintiffs are simply unfamiliar with the complaint, which we have attached to this brief (*see* Exh. D).  The provider there was not suing to vindicate the *members'* rights; rather it was suing to protect its own rights under state law to have its assignments honored.  The complaint was not about a failure to pay covered services pursuant to particular Plan terms, but about an allegedly systematic effort to undermine provider rights by ignoring their assignments.  Finally, as an unpublished decision, *AAOT* may be cited as "persuasive authority."  11th Cir. R. 36-2.

revisited her holding.

Plaintiffs also point to *Transitional Hospitals Corp. of Louisiana, Inc. v. Blue Cross Blue Shield of Louisiana*, 2005 U.S. Dist. LEXIS 17823, *12 (E.D. La. August 16, 2005) as an additional reason this Court should decline to follow *AAOT* and *Howard*. However, in *Transitional Hospitals*, the district court held only that the action the carrier took pursuant to the direction of OPM did not form the basis of the plaintiff's state law claim, but rather, was merely evidence to support it. *Id.* Here, Plaintiffs' allegations regarding the timing of payments, denial or payment of claims, the application of the "medical necessity" criteria and the coding of claims are all central features of Plaintiffs' Complaint and of the services Blue Cross carries out under the authority of federal statute. Thus, this Court should not look to the out-of-circuit district court opinion in *Transitional Hospitals*, but should instead follow the two decisions in this Circuit.

As to the second requirement for application of § 1442(a)(1), Plaintiffs' allegations have a causal nexus to actions Blue Cross has taken pursuant to its official functions. That is, Blue Cross was plainly acting within the scope of its federal duties – *i.e.*, administering the Service Benefit Plan – when the supposed misdeeds concerning services to FEHBA enrollees occurred. Again, the processing and coding of claims, the payment of them, the application of medical-necessity criteria, and representations made are all matters that fall within Blue Cross' duties as a FEHBA carrier. Because Plaintiffs' allegations implicate those activities, the complaint has a causal nexus to Blue Cross' actions under color of federal office. Put differently, this is not a suit challenging Blue Cross' private actions unrelated to its administration of the FEHBA plan (such as, for example, the maintenance of its property); rather, the complaint challenges actions (whether done correctly or illegally) that relate to Blue Cross' Service Benefit Plan obligations.

And the third requirement for operation of § 1442(a)(1) is met: Blue Cross has colorable federal defenses to this action. Given FEHBA's express preemption provision (5 U.S.C. § 8902(m)(1)) and the now vast body of case law involving FEHBA preemption, *see infra* p. 15-20, including in suits brought by providers, *see St. Mary's Hosp.*, 192 F. Supp. 2d 384, Blue Cross unquestionably has at least a plausible basis for asserting that Plaintiffs' state law claims are subject to the defense of preemption. *See Blue Cross & Blue Shield of Fla., Inc. v. Dept. of Banking and Fin.*, 791 F.2d 1501, 1504-05 (11th Cir. 1986) (FEHBA preempts state unclaimed property law). For example, under the specifics of FEHBA's preemption provision, FEHBA contract provisions preempt state law. Here, FEHBA contract provisions provide the timeframe for making payments on claims, and Plaintiffs' allegations are based on different, shorter timeframes. Indeed, Plaintiffs concede Blue Cross presents a colorable claim of defensive preemption. *See* Mot. to Remand at 9-10.

In addition, Blue Cross has a colorable defense of sovereign immunity, because the funds to pay benefits come from the U.S. Treasury (*see* 5 U.S.C. § 8909), thereby making the United States the real party in interest in suits to recover additional amounts for covered services. *See Shands v. Beech St. Corp.*. 208 F.3d 1308, 1311-13 (11th Cir. 2000) (finding contractor administering health benefit plan for state employees immune from provider's suit seeking additional payments, including under theory of breach of the provider's contract with the carrier); *see also Matranga v. Travelers Ins. Co.,* 563 F.2d 677, 677 (5th Cir. 1977). Where the United States is the relevant party, it can only be sued if it has consented to be sued; here, it has nowhere consented to suits against it under state law. *Matranga*, 563 F.2d at 677; *cf.* 5 U.S.C. § 8912 (permitting suits against OPM "founded on" FEHBA).

23

Finally, Defendant has a colorable claim of official immunity. In cases involving a private party administering a government program, a two-part test applies for official immunity: "the Court's task is to determine whether the defendants' alleged conduct falls within the scope of the defendants' official duties as a carrier, and whether [the conduct] was discretionary and not merely ministerial." *Lifeline EMS, Inc. v. Ark. Blue Cross & Blue Shield*, 2001 U.S. Dist. LEXIS 1471, at *7 (E.D. La. Feb. 7, 2001); *see also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998) (Medicare carrier entitled to official immunity). As noted, the processing and coding of claims and the timing of payment are all governed by the contract between OPM and the Association, and Blue Cross exercises its discretion in considering and making payments of claims. *See Livingston*, 2001 U.S. Dist. LEXIS 1471, at *7-*8.

Plaintiffs' argument that Blue Cross does not present colorable federal defenses of official immunity and sovereign immunity based on *Lambert v. Mail Handlers Benefit Plan*, 886 F. Supp. 830 (M.D. Ala. 1995) simply misses mark. *Lambert* is a complete preemption decision. Nowhere does it address whether Blue Cross presents colorable claims of official or sovereign immunity. In addition, *Lambert* is no longer good law because the FEHBA preemption provision was substantially broadened and strengthened in 1998. *See, e.g.*, *Blue Cross and Blue Shield of Illinois v. Cruz*, 396 F.3d 793, 797 & n.1 (7th Cir. 2005) (noting obsolescence of pre-1998 decisions that viewed FEHBA preemption narrowly).

## III.    PLAINTIFFS' CLAIMS ARE COMPLETELY PREEMPTED BY ERISA. THIS COURT THEREFORE HAS ORIGINAL JURISDICTION OVER THIS ACTION.

In addition to this Court's jurisdiction under FEHBA, Blue Cross removed this civil action pursuant to 28 U.S.C. §§ 1441 and 1446 because the complaint filed against it presents claims that are completely preempted by ERISA. Plaintiffs claim in the Complaint that they are "entitled to receive objective claim processing and payment at agreed-upon rates, either as set

forth in in-network contracts or, for out-of-network dental providers, in the subscriber contracts" and allege that Blue Cross "systematically den[ies], delay[s] and diminish[es] payments to Plaintiffs" and fraudulently suppresses information regarding the "systematic claims processes to manipulate the CDT codes contained in the claims forms so as to reduce claims exposure" for Blue Cross. (Compl. p. 7 at ¶11, ¶40). Plaintiffs seek compensatory and punitive damages and declaratory and injunctive relief from Blue Cross for its alleged actions that "systematically deprive Plaintiffs of fees owed to them for covered dental services that they rendered to BCBS's subscribers...[and Blue Cross's] intentional delay of payments". *Id.*, ¶ 17.

In a recent series of cases, the Eleventh Circuit has set forth specific factors governing when a case is subject to complete ERISA preemption. First, there must be a relevant ERISA plan. Second, the plaintiff must have standing to sue under that plan. Third, the defendant must be an "ERISA entity." Fourth, the plaintiff must seek "compensatory relief akin to that available under" section 502(a) of ERISA. *Butero*, 174 F.3d at 1212. Because the record before the Court demonstrates that all four factors are present here, Plaintiffs' claims are completely preempted by ERISA.

There can be no serious dispute that Plaintiffs' claims satisfy the first, third and fourth of the *Butero* factors. First, the majority of Blue Cross subscribers for whom Plaintiffs provided dental services are participants in ERISA plans. *Caudle Aff.* at ¶ 4; *Smith Aff.* at ¶¶ 5, 8. *See also* 145 CONG. REC. H8155-05 (daily ed. Sept. 14, 1999) ("nearly 80% of the workers in this county" receive their health coverage through ERISA plans) (statement of Rep. Knollenberg); Linda J. Blumberg, "*Who Pays for Employer Sponsored Health Insurance*," 18 Health Affairs 58 (November/December 1999) (noting that the vast majority of Americans receive their health insurance through employer sponsored benefit plans to which employers contribute).

Second, it is plain that Blue Cross is an "ERISA entity." *Butero*, 174 F.3d at 1213. The Eleventh Circuit has made clear that the parties responsible for insuring and/or administering the payment of claims by ERISA plans are ERISA entities. *Id.*; *Morestein v. National Ins. Servs., Inc.*, 93 F.3d 715, 722-23 (11th Cir. 1996). The allegations in the Complaint in the instant case clearly relate to those responsibilities.

Third, Plaintiffs' claim for "damages" is, in reality, nothing more than an assertion that, in paying benefits due under the ERISA plans, Blue Cross failed to pay <u>all</u> of the ERISA benefits that were owed. The Eleventh Circuit has recognized that, when the recovery sought is for ERISA benefits, a wide variety of state law claims should be recast as ERISA claims, including claims for breach of contract. *See Butero*, 174 F.3d at 1213 (collecting cases). Because the Complaint seeks additional payments for purportedly covered services under the terms of employee benefit plans, Plaintiffs' claims clearly fall within the ambit of section 502. Two facts are dispositive in this regard. First, the additional payments sought by Plaintiffs are in reality extra payments allegedly owed for services rendered – precisely the type of relief that is accorded under Section 502. Plaintiff Mitchell's Agreement with Blue Cross, which specifically incorporates the terms of the subscriber's Benefit Agreements (the majority of which are ERISA plans insured or administered by Blue Cross), makes clear that the payment of claims for benefits is subject to the terms of those plans. *Agreement*, ¶ 4.3 ("Dentist agrees to provide…the Dental Services for which benefits are provided by the Benefit Agreement under which the Member is covered…"); ¶ 4.5 ("Dentist agrees to make no charge for Dental Services except to the extent permitted by this Agreement and the Member's Benefit Agreement"). Thus, any claims by Plaintiff Mitchell and the putative class of participating dentists for payment by Blue Cross of additional benefits under the Agreement necessarily involve claims for benefits under the terms

26

of the ERISA plans.  Similarly, Plaintiff Sanderson concedes in the Complaint that as a out-of-network dental provider, the rates applicable to his claims for additional benefits are found in the subscriber contracts.  (Compl. p. 7, ¶11).  In conceding this, he necessarily concedes that his claims for benefits are essentially claims under the terms of his patients' benefits plans, the majority of which are ERISA plans. (*Caudle Aff.*, ¶ 4; *Smith Aff.*, ¶¶ 6, 8.)  Second, if the same claims as alleged in Plaintiffs' Complaint were brought by a participant in a plan subject to ERISA, there would be no dispute that they would arise under Section 502 of ERISA.

That leaves the second *Butero* requirement – that the plaintiff has standing to sue under ERISA.  Governing Eleventh Circuit cases instruct that a provider plaintiff who accepts a patient's assignment of benefits (such as Dr. Mitchell and Dr. Sanderson)[6] has standing to pursue claims under ERISA Section 502, regardless of how such a plaintiff characterizes his or her claim.  For example, in *HCA Health Serv. of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 & n. 19 (11th Cir. 2001), the Eleventh Circuit explicitly held that the provider—who, like Plaintiffs, brought state law claims against a health insurer—had standing to bring an action under ERISA where the provider's patient assigned to the provider his right to recover from the insurer 80% of the costs of his surgery.  Similarly, in *Cagle v. Bruner*, 112 F.3d 1510, 1512-16 (11th Cir. 1997), the Eleventh Circuit held that a healthcare provider had derivative standing to bring an action against an ERISA plan where the record showed that the minor patient's father signed a form assigning his right to payment of medical benefits to the healthcare provider.  112 F.3d at 1512-16.

In the instant case, Plaintiffs averred in the Complaint that they file claims for payment directly with Blue Cross on behalf of their patients "either pursuant to contract or as assignees of

---

[6] Exhibit "3" to the Smith Affidavit includes a claim filed by Dr. Sanderson for services provided to a patient with health benefits coverage under the Federal Employment Plan, Dianne Carver, pursuant to an assignment of benefits

their patients' claims…"[7]    (Compl., ¶ 9).  Plaintiffs concede in the Motion to Remand that providers may obtain derivative standing under ERISA through an assignment of benefits from the patient, but baldly assert that their Complaint "is based, in part, on separate provider agreements as opposed to any ERISA plan or plans."  Mot. to Remand at p. 17.   This half-hearted statement, which concedes that ERISA plans are the basis for at least some of Plaintiffs' claims, utterly fails to acknowledge the many references in the Participating Dentist Agreement that the terms of the Benefit Agreement of the Blue Cross subscriber ultimately govern whether a claim is due to be paid at all for services provided by participating dentists.

The crucial terms governing charges that the Plaintiffs may make for dental services, their obligation to refund any erroneous payments, and the very identity of persons eligible to receive services from Dr. Mitchell are all dependent upon the terms of a patient's "Benefit Agreement".  Dr. Mitchell has agreed that he will make no charge for services "except to the extent permitted by this Agreement and the Member's Benefit Agreement."  *Agreement*, ¶ 4.5.  He has acknowledged that even if a particular dental service is listed on the fee schedule attached to the Agreement, such inclusion "does not mean that payment will be made for the procedure in all cases.  **Payment for any procedure will be dependent on whether the procedure is Medically/Dentally Necessary in the circumstances and within the terms of the Benefit Agreement under which the Member receiving the service is covered."**  *Id.*, ¶ 6.8 (emphasis added).  He has further agreed that if he receives a payment that is "shown through any provision of this agreement and any applicable Benefit Agreement" to be in error, he will refund the

from that patient.

[7] Because Plaintiffs' own Complaint conceded that Plaintiffs filed claims with Blue Cross as assignees of their patients' claims, it was unnecessary for Blue Cross to attach evidence establishing that fact.  However, Blue Cross has attached representative samples of claim forms submitted by Dr. Mitchell and Dr. Sanderson which clearly reflect that these claims were submitted pursuant to his patients' assignment of their rights to receive payment for those claims.  *Smith Aff.* at ¶¶ 4, 7.

erroneous payment.  *Id.*, § 4.9.  Most fundamentally, he has agreed that as a participating provider, he "will seek payment only from [Blue Cross] for the provision of Dental Services to all Members covered by a Benefit Agreement…for Dental Services provided…during the time the Member's Benefit Agreement is in effect."  *Id.* , ¶¶6.2, 6.3.

In *Aetna Health Inc. v. Davila*, 124 S.Ct. 2488, 2497 (2004), the insureds sued their HMO, alleging that the HMO had violated a state law imposing the duty of ordinary care upon an HMO when making health care treatment decisions for the insured.  The Court rejected the insureds' argument that the state law created an independent legal obligation for the HMO which precluded a finding of ERISA preemption, holding that:

> interpretation of the terms of respondents' benefit plans forms an essential part of their [statutory] claim, and [statutory] liability would exist here only because of petitioner's administration of ERISA-regulated benefit plans.   [The HMO's] potential liability…derives entirely from the particular rights and obligations established by the benefit plans.

*Id.*   In the instant case, the terms of the Agreement between Plaintiff Mitchell and Blue Cross similarly clearly establish that in deciding the merits of Plaintiff's claims for additional payments for dental services provided to Blue Cross subscribers, any liability borne by Blue Cross stems from the subscriber benefit plans which ultimately govern payment of the dental claims.  This argument is even more persuasive when considered in the context of a non-participating provider, such as Dr. Sanderson, whose right to payment is determined solely by reference to his patient's applicable health benefits plan, the majority of which plans insured or administered by Blue Cross are governed by ERISA.  *See eg. Hermann Hospital v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1289(5th Cir. 1988) (holding that the non-participating providers' claims state law claims were preempted by ERISA).

29

Moreover, Plaintiffs' assertion that their claims only partly involve ERISA plans is flatly contradicted by two Northern District of Alabama decisions involving health service provider's claims against Blue Cross. In *Blue Cross and Blue Shield of Alabama v. Peacock's Apothecary, Inc.*, 567 F. Supp. 1258 (N.D. Ala. 1983), the pharmacy argued that the court lacked jurisdiction under ERISA because the participating pharmacy agreement it entered with Blue Cross was not itself an employee benefit plan. *Id.* at 1267. The court rejected this argument, finding that although the participating pharmacy agreements "standing alone, are not employee benefit plans under ERISA, the participating pharmacy agreements clearly are part and parcel of ERISA 'employee benefit plans'." *Id.* at 1267. The court thus found that it had jurisdiction over the case under ERISA. *Id.* at 1277.

In the March 15, 2005 decision entered by the Court in *David J. Below, D.C. v. Blue Cross and Blue Shield of Alabama,* CV-04-HS-0246-NE, a true and correct copy of which is attached hereto as Exhibit "E", a chiropractor filed suit against Blue Cross for alleged breaches of his participating chiropractor agreement, including purported untimely payment of claims, unfair denial of requests for reimbursement by the chiropractor, and the imposition of unreasonable patient caps on chiropractic benefits. Like the Plaintiffs in the instant case, Dr. Below stated that he was pursuing only state law causes of action in his complaint. Applying the *Butero* factors, the Court concluded that Plaintiff's claims against Blue Cross were preempted by ERISA and that the plaintiff's motion to remand should be denied. The Court specifically found:

> (1) ERISA plans were indeed involved in the case, as the participating chiropractor agreement entered between Dr. Below and Blue Cross specifically referenced "Benefit Agreements", "defined as agreements in which Blue Cross agrees to provide, indemnify against, or administer chiropractic care benefits. It is undisputed that, for a substantial percentage of Below's patients, the benefit agreements involved are plans governed by ERISA." *Id.*, p. 3 (citations omitted);

30

(2) Dr. Below had standing to sue Blue Cross as an assignee of his patient's claims for benefits under their ERISA plans. *Id.*;

(3) Blue Cross is an ERISA entity, as it "serves as the insurer and/or claims administrator for numerous ERISA employee welfare plans and that 70% of Blue Cross' members receive their benefits through ERISA plans." *Id.*;

(4) The complaint did seek relief akin to the relief available under ERISA, as the complaint referenced Dr. Below's claims to recover benefits for chiropractic services he rendered and as the participating chiropractor agreement "cannot be enforced without reference to his patients' benefit agreements…under the Chiropractor Agreement, Below is not entitled to any payment for services unless benefits are due for those services under the members' benefit agreements." *Id.*, p. 5.[8]

In the case before this Court, it is readily apparent that in order to resolve the Plaintiffs' claims for damages, the Court will necessarily have to examine and interpret the terms of the Benefit Agreements, which in the majority of cases are employer-sponsored employee welfare benefit plans governed by ERISA. Clearly, ERISA benefit plans are integral to the Court's resolution of the issues in this case. Consequently, Plaintiffs' state law claims are completely preempted, and this Court has subject matter jurisdiction over this action. The Court should therefore deny Plaintiffs' Motion to Remand.

---

[8] Blue Cross is aware of this Court's recent decisions in *Main Drug, Inc. v. Aetna U.S. Healthcare, Inc., et al.*, Case No. 2:05-CV-292-F and *Eufaula Drugs, Inc. v. TDI Managed Care Services*, CV-05-293-F, in which this Court found that there was insufficient evidence of ERISA preemption of the plaintiff's claims. In the instant case, Blue Cross has provided specific evidence proving that the Participating Dentist Agreement incorporates by specific reference the Benefit Plans of Blue Cross subscribers as the controlling document for determining whether the dental benefits payments about which Plaintiffs complain are payable. Blue Cross has thus proven that the Participating Dentist Agreement is "part and parcel" of the health benefits plans administered or insured by Blue Cross and that ERISA does preempt Plaintiffs' claims in this case.

## <u>CONCLUSION</u>

For the above stated reasons, the Court should deny Plaintiff's motion to remand.


Respectfully submitted,

s/ James L. Priester
One of the Attorneys for Defendant
Blue Cross and Blue Shield Of Alabama




OF COUNSEL:


James L. Priester
Edward A. "Ted" Hosp
Grace C. Robinson
MAYNARD, COOPER & GALE, P.C.
1901 6th Avenue North
Suite 2400
Birmingham, Alabama 35203-2618
(205) 254-1000
(205) 254-1999 (fax)

Jere F. White, Jr.
William H. Brooks
Terrence W. McCarthy
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203-3200
(205) 581-0700
(205) 581-0799 (fax)

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to counsel listed below via electronic filing on this 10th day of February, 2006:

Jere L. Beasley
W. Daniel "Dee" Miles, III
Clinton C. Carter
BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, AL  36103-4160

McCALLUM, METHVIN & TERRELL, P.C.
2201 Arlington Avenue S.
Birmingham, AL  35205

McCALLUM, HOAGLUND, COOK & IRBY, LLP
2062 Columbiana Road
Vestavia Hills, AL  35216-2147

s/ James L. Priester_____
Of Counsel