IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| THE ALABAMA DENTAL ASSOCIATION, INC. LEW MITCHELL, DMD, and, JAMES SANDERSON, DMD, | * * * * * | |
| Plaintiffs, | * * | Civil Action No.:  2:05-cv-1230 |
| vs. | * * | |
| BLUE CROSS AND BLUE SHIELD OF ALABAMA, | * * * | |
| Defendant. | * | |

## PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Plaintiffs respectfully file this reply to Defendant's Response in Opposition to Plaintiffs' Motion to Remand.

## INTRODUCTION AND SUMMARY

Plaintiffs' provide dental services to Defendant BCBS's subscribers as third party health care providers. Pursuant to contracts with BCBS or under a third party beneficiary interest, Plaintiffs are entitled to be compensated in a timely manner for rendering covered dental services in accordance with standard dental coding procedures, as well as rates. Plaintiffs relied upon BCBS's representations, both express and implied, that they would be paid for rendering covered dental services pursuant to, and consistent with, Current Dental Terminology (CDT) codes submitted on the dental claim forms.

BCBS filed its Notice of Removal, removing the matter from the Circuit Court of Montgomery County, Alabama to this Honorable Court. The Defendant erroneously bases

the removal on three grounds completely inapplicable to Plaintiffs' claims. First, BCBS assert the Plaintiffs' state law claims are "preempted" by the Federal Employees' Health Benefits Act ("FEHBA"). Second, BCBS alleges that federal jurisdiction is created by 28 U.S.C. § 1442(a)(1), the "Federal Officer Removal Statute." Third, Defendant argues the Plaintiffs' state law claims are removable under 29 U.S.C. § 1132 (ERISA).

The BCBS Removal failed to demonstrate that there is federal jurisdiction over Plaintiffs' state law causes of action arising out of plaintiffs' agreements with BCBS to render dental services to BCBS' subscribers. This case should therefore be remanded to state court.

## ARGUMENT

**I.    THE COURT LACKS REMOVAL JURISDICTION BECAUSE FEHBA DOES NOT COMPLETELY PREEMPT PLAINTIFFS' STATE LAW CLAIMS**

In Plaintiffs' view, § 8902(m)(1), which makes no reference to a federal right of action or to federal jurisdiction, is simply a limited preemption clause that the instant dispute does not trigger. Reading § 8902(m)(1) as conferring federal jurisdiction over contract disputes between private parties strains the language of the provision and undermines the presumption against federal preemption that should guide the analysis in this case. *See Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 323 (2d Cir.2003) (noting that there is an "assumption that Congress does not intend to supplant state law" (citation and internal quotation marks omitted)).

Notably, FEHBA does contain a provision authorizing federal jurisdiction over FEHBA-related civil actions or claims "*against the United States.*" 5 U.S.C. § 8912 (emphasis added). Of course, the grant of federal jurisdiction over one category of

2

claims does not necessarily strip federal courts of their jurisdiction over another category of claims. *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n,* 535 U.S. 635, 643-44, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002). Nevertheless, § 8912 does demonstrate that Congress considered jurisdictional issues in enacting FEHBA and did not hesitate expressly to confer federal jurisdiction where it found it necessary to do so.

Two independent conditions must be satisfied in order to trigger preemption under § 8902(m)(1). First, preemption only occurs when the FEHBA contract terms at issue "relate to the nature, provision, or extent of coverage or benefits." 5 U.S.C. § 8902(m)(1). Second, federal law may only preempt state or local laws if those laws "relate[s] to health insurance or plans." *Id.* BCBS completely ignores the existence of this second condition, arguing erroneously that because the contract provisions at issue relate to benefits, they necessarily supersede "all state law." Without any showing that the dispute implicates a specific state law or state common-law principle "relat[ing] to health insurance," § 8902(m)(1) does not authorize federal preemption of state law in this case.

The suit will might have triggered FEHBA's preemption provision if Plaintiffs sued by reference, for example, to a state health insurance law. Such a possibility of preemption, however, is insufficient to establish federal jurisdiction. As discussed thoroughly in the motion to remand, the well-pleaded complaint rule precludes a party from invoking federal jurisdiction merely because it anticipates a defense that will be preempted by federal law. *Briarpatch Ltd.,* 373 F.3d at 304; *see also Davila,* 124 S.Ct. at 2494; *City of Rome,* 362 F.3d at 177. If Plaintiffs do not bring claims in reliance upon some state law relating to health insurance, or in reliance on some state common law

3

principle that would clearly run counter to federal policy, then state law could resolve whether BCBS breached its obligations. *See Wallis v. Pan Am. Petroleum Corp.*, 384 U.S. 63, 71, 86 S.Ct. 1301, 16 L.Ed.2d 369 (1966) (finding no authority to fashion federal common law where "there has been no showing that state law is not adequate to achieve" the federal interest).

As this Court, as well as the Supreme Court has recognized, the precise meaning of the vague term "relates to" depends on the larger statutory context. *See, e.g., Gerosa,* 329 F.3d at 323 (stating that "ERISA's nearly limitless 'relates to' language offers no meaningful guidelines to reviewing judges," and that we must therefore " 'go beyond the unhelpful text ... and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive' " (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655-56, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995))); *Roach v. Mail Handlers Benefit Plan,* 298 F.3d 847, 850 (9th Cir.2002) (" '[R]elates to' must be read in the context of the presumption that in fields of traditional state regulation the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that was the clear and manifest purpose of Congress. Here, this means that one must presume that Congress did not intend [FEHBA] to preempt the quintessentially state-law standards of reasonable medical care, because § 8902(m)(1) does not indicate a clear and manifest intent to preempt this area of state law." (second and third alterations in original) (citations and internal quotation marks omitted)). The Supreme Court has specifically warned against overly-broad interpretations of the term, noting that "[i]f 'relate[s] to' were taken to extend to the furthest stretch of its

4

indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere." *Travelers Ins. Co.*, 514 U.S. at 655, 115 S.Ct. 1671 (alteration, citation and internal quotation marks omitted). To define "relate[s] to" so broadly "would be to read Congress's words of limitation as mere sham, and to read the presumption against pre-emption out of the law whenever Congress speaks to the matter with generality." *Id.*

Insurers adore the argument that "relate to" is "synonymous with the phrases 'in connection with,' 'associated with,' 'with respect to,' and 'with reference to.'" *Post* at 157. The Supreme Court, however, has recognized the limited usefulness of such definitions. In *Travelers Insurance Co.*, a case involving ERISA, the Court wrote:

> "[We must determine] whether the surcharge laws have a "connection with" the ERISA plans, and here an uncritical literalism is no more help than in trying to construe "relate to." For the same reasons that infinite relations cannot be the measure of pre-emption, neither can infinite connections. We simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term, and look instead to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive."

514 U.S. at 656, 115 S.Ct. 1671.

It is inappropriate to rely on ERISA-based precedent to justify an expansive interpretation of FEHBA's preemption provision, given the fundamental differences between ERISA and FEHBA. ERISA is significantly more comprehensive than FEHBA, in that it contains multiple preemption provisions and a detailed civil enforcement scheme intended to completely supplant state law. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). The Supreme Court has relied

heavily on ERISA's civil enforcement provisions, as well as those provisions' unambiguous legislative history, to support holdings that broadly construe ERISA's preemptive reach. *See Davila,* 124 S.Ct. at 2500 (stating that the Court's understanding of ERISA's preemptive effect is informed by the "overpowering federal policy" embodied in ERISA's civil enforcement provision, which was intended to create "an exclusive federal remedy"); *Pilot Life,* 481 U.S. at 55, 107 S.Ct. 1549 (quoting the ERISA Conference Report's statement that all suits to enforce benefits rights "are to be regarded as arising under the laws of the United States" (emphasis omitted)); *see also Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990) (noting that ERISA's "deliberately expansive language was designed to establish pension plan regulation as exclusively a federal concern" (citation and internal quotation marks omitted)); *Pilot Life,* 481 U.S. at 46, 107 S.Ct. 1549 (noting ERISA sponsors' emphasis on the "breadth and importance of [ERISA's] preemption provisions"). Given ERISA's comprehensive civil enforcement mechanisms and a legislative history "fully confirm[ing]" that ERISA's remedies were meant to be exclusive, *Pilot Life,* 481 U.S. at 54, 107 S.Ct. 1549, it is erroneous to rely on ERISA-related precedent to determine the preemptive reach of FEHBA. *See Ingersoll-Rand Co.,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474; *Devlin v. Transp. Communications Int'l Union,* 173 F.3d 94, 98 (2d Cir. 1999).

To the extent it is helpful to rely on case law interpreting preemption provisions appearing in other statutes, Plaintiffs find *American Airlines, Inc. v. Wolens,* 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995), relevant and quite instructive. *Wolens* involved the Airline Deregulation Act (ADA), which bars states from " 'enact[ing] or

6

enforc[ing] any law relating to [air carrier] rates, routes, or services.' " *Id.* at 221-22, 115 S.Ct. 817 (quoting 49 U.S.C App. § 1305(a)(1), now codified as amended at 49 U.S.C. 41713(b)). The Plaintiffs in *Wolens* were airline customers who brought state law claims for consumer fraud and breach of contract after the airline retroactively took away their frequent flyer miles. The Supreme Court held that the consumer fraud claims, which were brought under a state statute, were preempted, but that the breach of contract action was not. The airline had argued that in passing the ADA, Congress provided that questions of the airline's rights and obligations would be matters of federal and not state law. The Court disagreed, stating:

> "[It is not] plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes, or services. The ADA contains no hint of such a role for the federal courts. In this regard, the ADA contrasts markedly with the ERISA, which does channel civil actions into the federal courts, under a comprehensive scheme detailed in the legislation, designed to promote prompt and fair claims settlement."

*Id.* at 232, 115 S.Ct. 817 (citation and internal quotation marks omitted).

Adopting this same reasoning, FEHBA does not reveal a congressional objective to resolve all manner of breach of contract or fraud suits relating to the Service Benefit Plan in federal court.

Candidly, the ADA, unlike ERISA and FEHBA, was aimed at encouraging competition rather than uniformity. *See post* at 158-59. Nevertheless, in distinguishing the ADA from ERISA, the *Wolens* court relied heavily on ERISA's civil enforcement

scheme. 513 U.S. at 232, 115 S.Ct. 817. If this is the key factor distinguishing the ADA from ERISA, then FEHBA would seem to resemble the former more than the latter.

BCBS cites a House Report stating that the purpose of the 1998 FEHBA amendments was, in part, to "strengthen the case for trying FEHB program claims disputes in Federal courts rather than State courts" and to "completely displace State or local law relating to health insurance or plans." H.R.Rep. No. 105-374; *see post* at 156. Notably, the Report refers to displacing state and local law "*relating to health insurance or plans*," and not to generally applicable state law that may have an effect on benefits or coverage in some cases. *Id.* at 16. (emphasis added). As for the language that relates to bringing claims in federal court, it is something of a mystery what the authors of the report meant by "strengthen the case." This ambiguous wording seems to imply a recognition that the 1998 amendments did not guarantee federal jurisdiction. Given that (1) section 8902(m)(1) is by its plain and unambiguous terms a preemption provision and not a grant of jurisdiction, and (2) the legislative history provides only limited and equivocal support for a contrary conclusion, the assertion that the committee reports cited by BCBS support its broad reading of § 8902(m)(1) is misguided. *See Padilla v. Rumsfeld,* 352 F.3d 695, 718 (2d Cir.2003) ("If the plain language is unambiguous, judicial inquiry ends, except in rare and exceptional circumstances, and legislative history is instructive only upon the most extraordinary showing of contrary intentions." (citation and internal quotation marks omitted)), *rev'd on other grounds,* --- U.S. ----, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004). The 1998 amendments certainly do expand the preemptive reach of FEHBA, but § 8902(m)(1) remains a preemption clause, not a grant of federal jurisdiction.

8

## II. THE COURT LACKS REMOVAL JURISDICTION UNDER THE FEDERAL OFFICER REMOVAL STATUTE

BCBS is arguing that jurisdiction exists by virtue of its status as a federal officer. Such an argument lacks merit. "The federal character of the litigant should not alone confer jurisdiction upon a federal court." *Mesa*, 489 U.S. at 131; *see id.* at 136 ("Section 1442(a), therefore, cannot independently support Art. III 'arising under' jurisdiction."); *Williams v. Brooks*, 945 F.2d 1322, 1324-25 n.2 (5th Cir. 1991). For BCBS to properly remove, it "must show that (1) they are 'persons' within the meaning of the statute; (2) [must show that] they [were] 'acting under color of federal authority' when committing the acts leading to the instant lawsuit; [and] (3) must assert a colorable federal defense." *Winters v. Diamond Shamrock Chemical Co.*, 901 F.Supp. 1195, 1197 (E.D. Tex. 1995), *aff'd*, 149 F.3d at 397-401. BCBS fails to establish prongs (2) and (3).

Although *Mesa* articulates a four-prong test, since *Mesa*, the Supreme Court has combined the "causal nexus" prong into the second prong. *See Jefferson County Ala. v. Acker*, 527 U.S. 423, 431, 144 L. Ed. 2d 408, 119 S. Ct. 2069 (1999) ("To satisfy the [acting under color of office] requirement, the officer must show a nexus, a 'causal connection' between the charged conduct and asserted official authority.") (internal citation omitted); *Winters*, 149 F.3d at 398; *see also Faulk v. Owens-Corning Fiberglass Corp.*, 48 F.Supp.2d 653, 659 n.7 (E.D. Tex. 1999).

BCBS was not "acting under color of federal authority" when it employed a fraudulent computer program to systematically deny, diminish and delay the payment of claims to Plaintiffs. While BCBS articulates the regulations from which it allegedly denied Plaintiffs' claims, it has not demonstrated that its decisions were performed

9

pursuant to the direct and detailed control of an officer of the United States. *See Kennedy v. Health Options, Inc.*, 329 F.Supp.2d 1314, 1318 (S.D. Fla. 2004)("the presence of federal regulations does not satisfy the requirements to assert federal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1)"); *Jamison v. Purdue Pharma Co.*, 251 F. Supp. 2d 1315, 1326 (S.D. Miss. 2003) (merely establishing that the relevant acts occurred under the general auspices of federal direction does not support federal officer removal); *Madden v. Able Supply Co.*, 205 F. Supp. 2d 695, 700-01 (S.D. Tex. 2002) ("the uncontested Gate affidavit plainly shows that [defendant] was acting under the direction of a Naval officer"); *Arnold*, 973 F.Supp. at 740 ("Blue Cross must establish that the federal officer or agent has 'direct and detailed control over the defendant.'") (quoting *Winters*, 901 F.Supp. at 1199); *Good v. Armstrong World Industries, Inc.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996) (existence of statute governing defendant's actions does not alone support federal officer removal); *Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992) (same). Therefore, BCBS has not demonstrated that it was "acting under color of federal authority when committing the acts leading to the instant lawsuit." *Winters*, 901 F.Supp. at 1197.

BCBS has failed to aver a federal defense. *See Jefferson County*, 527 U.S. at 431; *Mesa*, 489 U.S. at 134, 139. Although BCBS "need not prove the asserted defense," BCBS must articulate the "'colorable' applicability" of a federal defense "to the plaintiff's claims." *Winters*, 149 F.3d at 400. Indeed, BCBS "need not win [its] case before he can have it removed." *Jefferson County, 527 U.S. at 431* (citing *Willingham v. Morgan, 395 U.S. 402, 407, 23 L. Ed. 2d 396, 89 S. Ct. 1813 (1969))*; **[\*16]** *Mesa, 489 U.S. at 134, 139*(same).

BCBS may raise its preemption argument to Plaintiffs' state law claims in state court. *See Christus Health Gulf Coast v. Aetna, Inc.*, 167 S.W.3d 879, 2005 Tex. App. LEXIS 2869, 2005 WL 851187 (Tex. App. -- Houston [14 Dist.] 2005) (analyzing defendant's failure to exhaust administrative remedies defense under Medicare); *Wright v. Combined Ins. Co. of America*, 959 F.Supp. 356, 363 (N.D. Miss. 1997) ("The mere interpretation of the Medicare and Medicaid statutes as an essential portion of the plaintiff's claims does not confer upon this court original jurisdiction over those state law claims.") (citing *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 813, 92 L. Ed. 2d 650, 106 S. Ct. 3229 (1986)); *Arnold*, 973 F.Supp. at 730 ("The state courts are competent to interpret federal law as well as adjudicate cases that may involve a significant federal interest.") (quoting *Chuska Energy Co. v. Mobil Exploration & Producing, N. Am. Inc.*, 854 F.2d 727, 730 (5th Cir.1988)).

BCBS erroneously asserts that BCBS enjoys official and sovereign immunity because the Plaintiffs' case implicates funds in the U.S. Treasury, making the United States the real party in interest. Judge Albritton addressed this issue in his opinion from *Lambert v. Mail Handlers Benefit Plan,* 886 F. Supp. 830, 1995 U.S. Dist. LEXIS 6765 (M.D. Ala. 1995). In *Lambert*, Judge Albritton held:

> "Although it is true that the federal treasury pays a large percentage of the bills for the plan at issue, this alone does not suffice. See, e.g., *Rocky Mountain Hospital and Medical Service v. Phillips,* 835 F. Supp. 575, 578 (D.Colo. 1993), affirmed, 28 F.3d 113 (10th Cir. 1994), cert. granted, 115 S. Ct. 714 (1995), cert. dismissed, 1995 WL 139416 (March 31, 1995). This issue presents no uniquely federal interest comparable to the procurement of military equipment at issue in Boyle. Additionally, the impact of allowing a state court to hear this contract dispute between private parties will not frustrate federal policy. As noted above, there is no indication that state courts are not able to apply the federal

11

> law, or that allowing state courts to hear this issue will result in the frustration of Congressional intent. In fact there is substantial evidence to the contrary. Given the determination by this court that Congress could have completely preempted state law and state jurisdiction in this area and chose not to, it would be anomalous to then decide that federal common law brought about what the legislature determined was not necessary."

*Lambert,* 886 F. Supp. at 837.

Considering this Court's ruling in *Lambert*, BCBS's official and sovereign immunity defense is not viable which is fatal for removal under § 1442(a)(1).

BCBS's mere implication of a preemption or sovereign immunity defense falls short of the pleading standard. Accordingly, BCBS has failed, to meet its burden of establishing that federal question jurisdiction exists. *See Winters*, 149 F.3d at 397.

### III. PLAINTIFFS' CLAIMS ARE NOT PREEMPTED BY ERISA. THEREFORE, THIS COURT DOES NOT HAVE ORIGINAL JURISDICTION.

Courts have, with near unanimity, found that independent state law claims of third party health care providers are not preempted by ERISA. See, e.g., In *Home Health, Inc. v. Prudential Ins. Co. of America*, 101 F.3d 600, 606 (8th Cir. 1996); *The Meadows v. Employers Health Ins.*, 47 F.3d 1006 (9th Cir. 1995); *Lordmann Enterprise, Inc. v. Equicor, Inc.*, 32 F.3d 1529 (11th Cir. 1994); *Hospice of Metro Denver, Inc. v. Group Health Ins. of Okla., Inc.*, 944 F.2d 752 (10th Cir. 1991); *Memorial Hospital System v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990). Judge Moreno, in *In re Managed Care Litigation*, 135 F. Supp. 2d 1253 (S.D. Fla. 2001), summarized the rationale for declining to extend the preemptive reach of ERISA to claims of third party health care providers:

The preemption section [of ERISA] states that this federal statute "shall supercede any and all state laws insofar as they may now or thereafter relate to any employment plan" covered by ERISA. 29 U.S.C. §§ 1144(a). A state law "relates to" a covered employee benefit plan "if it has a connection with or reference to such a plan." *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 129, 113 S. Ct. 580, 121 L. Ed. 2d 513 (1992), quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983).

In *Lordmann Enterprises, Inc. v. Equicor, Inc.*, 32 F.3d 1529 (11th Cir. 1994), the Eleventh Circuit agreed with the position of *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236 (5th Cir. 1990), that "state law claims brought by health care providers against plan insurers too tenuously affect ERISA plans to be preempted by the Act." *Lordmann Enterprise, Inc.*, 32 F.3d at 1533. In this case, the Subscriber-Class Plaintiffs assert that they seek to enforce the terms and conditions of their own contracts with the Defendants, rather than assignments from ERISA beneficiaries. See also *Variety Children's Hospital, Inc. v. Blue Cross/Blue Shield*, 942 F. Supp. 562, 568 (S.D.Fla. 1996) (claim not preempted where provider plaintiff brought suit in its independent status as a third-party rather than as an assignee of benefits). The Plaintiffs allege that the Defendants engaged in bundling and downcoding, actions which sustain a breach of contract claim without a need for reference to the interpretation of ERISA plans. The Plaintiffs' state law contract and fraud claims therefore do not "relate to" the ERISA plans, and are not preempted by the Act.

The policy arguments set forth in *Memorial Hospital* and adopted by the court in *Lordmann Enterprises* elucidate the wisdom of this result. First, preemption of provider

13

contract claims would "defeat rather than promote" ERISA's goal to "protect the interests of employees and beneficiaries covered by benefit plans." *Lordmann Enterprise, Inc., 32 F.3d at 1533.* The court theorized that as a result of preemption, health care providers could no longer rely as freely on the representations of insurers and would therefore act to protect themselves by denying care or raising fees. *Id.* Second, health care providers are not within the scope of ERISA. *Id.* Although employer and employees traded their right to bring a state cause of action in exchange for the benefits of ERISA, the statute does not provide a cause of action for health care providers who treat ERISA participants. In short, preemption of state law claims would leave health care providers with no viable civil remedy. *Id.* at 1533-34.

"Bundling" is a process whereby the defendant HMOs are alleged to have arbitrarily reduced payments to providers by combining two or more procedures (Compl., ¶¶ 14-18). "Downcoding" is an operation whereby the HMOs change the benefit codes entered on reimbursement forms by the providers in a manner designed to reduce payments due to those providers. *Id.*

BCBS argues that Plaintiffs' claims are, in reality, based upon an assignment of benefits under ERISA plans and thus, are derivative of their patients' right to benefits. As to the Subscriber-Class, no such assignments exist. Plaintiffs in the subscriber class are asserting in this action an independent contractual right of dental providers to receive payment consistent with the contractual formulas, not the right to any benefits due to plan participants. It is undisputed that these contractual rights are not available to plan participants, and thus, could not be assigned by those participants.

Defendant's theory that Plaintiffs' claims are preempted because they require interpretation of ERISA plan terms is misguided. Because Defendants have already paid the claims at issue, Defendants have already determined those claims to be for "covered services." (Compl., ¶ 8). What is at issue is the amount of payment, and the source for that determination is the contract, not the enrollee plans.

## CONCLUSION

Based on the foregoing, Plaintiffs' Motion to Remand is due to be **GRANTED**. Plaintiffs ask this Court to issue an order remanding this action back to the Circuit Court.

Respectfully Submitted,

/s/ Clinton C. Carter
**CLINTON C. CARTER (CAR 112)**
Attorneys for Plaintiffs

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
Post Office Box 4160
Montgomery, Alabama 36103-4160
Telephone:   (334) 269-2343
Facsimile:   (334) 954-7555

**MCCALLUM, METHVIN & TERRELL, P.C.**
2201 Arlington Ave. S.
Birmingham, Alabama 35205-0000
Telephone:   (205) 939-0199
Facsimile:   (205) 939-0399

**MCCALLUM, HOAGLUND, COOK & IRBY, LLP**
2062 Columbiana Rd
Vestavia Hills, AL 35216-2147
Telephone:   (205) 824-7767
Facsimile:   (205) 824-7768

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 17, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

James L. Priester  jpriester@maynardcooper.com
Edward A. "Ted" Hosp  hospte@mcglaw.com
Grace C. Robinson  grobinson@mcglaw.com
**MAYNARD, COOPER & GALE**
1901 6th Avenue North, Suite 2400
Birmingham, Alabama 35203-2618
Telephone:   205-254-1000
Facsimile:    205-254-1999

Jere F. White, Jr.  jwhite@lfwlaw.com
William H. Brooks  wbrooks@lfwlaw.com
Terrence W. McCarthy  tmccarthy@lfwlaw.com
**LIGHTFOOT, FRANKLIN & WHITE**
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203-3200
Telephone:   205-581-0700
Facsimile:    205-581-0799

                                                    /s/ Clinton C. Carter
                                                    OF COUNSEL