IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THE ALABAMA DENTAL            )
ASSOCIATION, *et al.*,           )
                              )
        Plaintiffs,           )
v.                            )        CASE NO. 2:05-cv-1230-MEF
                              )                (WO)
BLUE CROSS AND BLUE SHIELD OF )
ALABAMA, INC.,                )
                              )
        Defendant.            )

## MEMORANDUM OPINION AND ORDER

Plaintiffs—The Alabama Dental Association ("ALDA") and two individual dentists,

Lew Mitchell ("Mitchell") and James Sanderson ("Sanderson")—allege that Defendant Blue

Cross and Blue Shield of Alabama, Inc. ("BCBS") has engaged in a pattern and practice of

billing procedures that violate contractual agreements BCBS has made with either the

dentists or their individual patients.  The Plaintiffs filed their complaint in the Montgomery

County Circuit Court on November 22, 2005 seeking to represent a class of similarly situated

dentists in the prosecution of these claims under Alabama law.  On December 27, 2005, the

Defendant removed the case to this Court on the basis that the interpretation of the contracts

at issue would implicate matters completely preempted by federal law.  This cause is

presently before the Court on the Plaintiffs' Motion to Remand (Doc. #7), filed on January

26, 2006 and the Defendant's Motion to Dismiss (Doc. #4) and Motion to Transfer Venue

(Doc. #5), both filed on January 18, 2006.  After considering the submissions of the parties,

the Court finds, for the reasons set forth below, that the Plaintiffs' Motion to Remand (Doc.

#7) is DENIED and that the Defendant's Motion to Dismiss (Doc. #4) and Motion to Transfer Venue (Doc. #5) are GRANTED.

## FACTS AND PROCEDURAL HISTORY

The Plaintiffs in this action supply dental services to Defendant BCBS's individual subscribers as third-party health care providers. Plaintiff Mitchell purports to represent all "in-network" dentists; that is, all dentists who have entered into contractual agreements directly with BCBS. These dentists furnish their services to BCBS subscribers pursuant to Participating Dentist Agreements, wherein the dentists agree not to bill BCBS's subscribers for the treatment they provide, and BCBS agrees to directly compensate the dentists in accordance with the terms of the subscribers' Benefit Agreements with BCBS. As part of these compacts, BCBS conditions payment for services on a finding that the services were "Medically/Dentally Necessary" within the terms of the respective Benefit Agreements.

Plaintiff Sanderson seeks to represent those dentists who have not entered into Participating Dentist Agreements with BCBS. While BCBS does not prohibit direct payment to these "out-of-network" dentists, claims related to Sanderson's services are, for the most part, paid to the individual subscribers because Sanderson ceased enrollment as a participating dentist with BCBS in 1997. On other occasions, however, Sanderson has submitted claims directly to BCBS pursuant to assignments received from his patients. Thus, Sanderson stands as a third-party beneficiary or an assignee of his patients' right to payment for dental services under the terms of each patient's Benefit Agreement. As is the case with

Mitchell's patients, payment from BCBS is dependent upon a finding by BCBS that the billed services are "Medically/Dentally Necessary" according to the patient's Benefit Agreement.

Of Mitchell and Sanderson's patients, a majority obtain their health benefits under plans regulated by either the Employee Retirement Income Security Act of 1974 ("ERISA") or the Federal Employees Health Benefits Act ("FEHBA"). Of those BCBS subscribers who have sought treatment from Mitchell, fifty-five percent belong to ERISA plans. Seventy-four percent of the claims submitted to BCBS by Sanderson fall into this category. In addition, many of both dentists' respective clients are employed by the federal government and are enrolled in Service Benefit Plans, which are regulated by the federal Office of Personnel Management ("OPM") pursuant to FEHBA.

Each dentist seeking compensation from BCBS must submit their claimed services to BCBS in conformity with Current Dental Technology ("CDT") codes. These codes are the national standard for reporting dental services required by the Federal Government under the Health Insurance Portability and Accountability Act of 1996. According to the Plaintiffs, BCBS has taken advantage of this arrangement by processing submitted claims through an automated system that automatically decreases the dentists' compensation. BCBS allegedly achieves this result by "downcoding" and "bundling" submitted services. Downcoding occurs when a claims processor changes the code submitted by a dentist to a service with a less expensive CDT code. Bundling results from the combination of two separate codes into

a single procedure for the purposes of billing. The Plaintiffs assert that these actions, among others, are taken by BCBS to deny, delay, and diminish BCBS's liability at the expense of the Plaintiffs.

As a result, ALDA, Mitchell, and Sanderson filed suit against BCBS on November 22, 2005 in the Circuit Court for Montgomery County. Their complaint seeks relief under Alabama law and alleges causes of action that include fraud, fraudulent suppression, unjust enrichment, and breach of contract. BCBS removed the action to this Court on December 27, 2005. On January 18, 2006, BCBS filed a motion seeking the dismissal of ALDA from this case for lack of standing and a separate motion seeking the transfer of this case to the Northern District of Alabama. On January 26, 2006, the Plaintiffs filed a motion asking that this case be remanded to state court. The Court addresses all three of these motions below.

## DISCUSSION

### A. Motion to Remand

BCBS asserts three alternate grounds on which jurisdiction in this case is proper: (1) complete preemption under ERISA, (2) complete preemption under FEHBA, and (3) coverage under the Federal Officer Removal Statute. The Court will address each argument in turn.

The removal statute is to be construed narrowly with all doubts concerning the propriety of removal resolved against the removing party. *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) Thus, "[t]he party seeking removal has the burden of establishing

federal jurisdiction." *Jerrell v. Kardoes Rubber Co., Inc.*, 348 F. Supp. 2d 1278, 1281 (M.D. Ala. 2004). As a general matter, "[a]ny claim that was originally filed in state court may be removed by a defendant to federal court if the case could have been filed in federal court originally." *Hill v. BellSouth Telecommunications, Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004). Where jurisdiction is not based on the diverse state citizenship of the parties, "the defendant must show that federal question jurisdiction is present." *Id*. Federal question jurisdiction extends to "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The well-pleaded complaint rule typically governs whether a claim "arises under" federal law. *Smith v. GTE Corp.*, 236 F.3d 1292, 1310 (11th Cir. 2001). This long-standing rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id*. (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) ("It is long settled law that a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law."). Thus, in most circumstances, "the plaintiff is the master of the complaint, free to avoid federal jurisdiction by pleading only state claims even where a federal claim is also available." *Hill*, 364 F.3d at 1314 (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 52 (2d Cir. 1998)).

Under the well-pleaded complaint rule, the fact that the defendant may have a defense based upon federal law does not usually change the jurisdictional analysis. *Beneficial Nat'l*

*Bank v. Anderson*, 539 U.S. 1, 6 (2003); *see also Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 813 (1986) ("[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal jurisdiction."). Nevertheless, the Supreme Court has recognized that certain federal laws carry a preemptive force so "extraordinary" that state-law complaints are converted into federal claims for the purposes of the well-pleaded complaint rule. *Beneficial Nat'l Bank*, 539 U.S. at 6-8. This doctrine, known as complete or super-preemption, allows a state court defendant to remove a case to federal court despite the absence of a federal issue on the face of the plaintiff's complaint. *See Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1329 (11th Cir. 1998).

In *Taylor*, the Supreme Court ruled that "Congress has accomplished this complete preemption in 29 U.S.C. § 1132(a), which provides the exclusive cause of action for the recovery of benefits governed by an ERISA plan." *Kemp v. Int'l Bus. Mach. Corp.*, 109 F.3d 708, 712 (11th Cir. 1997) (citing *Taylor*, 481 U.S. at 65-67). Thus, "[s]tate law claims seeking relief under §1132(a) are recharacterized as ERISA claims and therefore 'arise under' federal law." *Id*. Regardless of the merits of the plaintiff's claims, complete preemption will apply, and a federal court will have jurisdiction if "(1) there is a relevant ERISA plan, (2) the plaintiff has standing to sue, (3) the defendant is an ERISA entity, and (4) the complaint seeks compensatory relief" akin to that available under ERISA. *Cantrell v. Currey*, 407 F. Supp. 2d 1280, 1289 (M.D. Ala. 2005) (citing *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999)).

Beginning with the first factor, BCBS has provided uncontroverted evidence that a majority of the Plaintiffs' respective BCBS patients receive their dental benefits under an ERISA plan. These plans are implicated by the arrangements made between BCBS and the Plaintiffs because they are the reference point for determining whether services are "Medically/Dentally Necessary." Any analysis of BCBS's decisions concerning covered dental services will therefore necessarily involve these ERISA plans.

Turning now to the question of standing, "ERISA's civil enforcement section permits two categories of individuals to sue for benefits under an ERISA plan—plan beneficiaries and plan participants." *Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1351 (11th Cir. 1998) (citing 29 U.S.C. § 1132(a)). However, the Eleventh Circuit has held "that neither § 1132(a) nor any other ERISA provision prevents derivative standing based upon an assignment of rights from an entity listed in that subsection." *Cagle v. Bruner*, 112 F.3d 1510, 1514-15 (11th Cir. 1997). As a result, health care providers, such as Mitchell, have standing to pursue benefits due to their patients under ERISA plans when the provider seeks those benefits through an assignment from a patient. *Hobbs v. Blue Cross Blue Shield of Ala.*, 276 F.2d 1236, 1241 (11th Cir. 2001); *see also In re Managed Care Litigation*, 298 F. Supp. 2d 1259, 1291 (S.D. Fla. 2003) (finding that the claims of nonparticipating health care providers cannot be completely preempted in the absence of an assignment).

Although it appears Sanderson usually receives payment from his patients rather than BCBS, BCBS has submitted documentation that demonstrates that Sanderson has submitted

claims directly to BCBS pursuant to patient assignments since the expiration of his Participating Dentist Agreement in 1997. This evidence is consistent with the language of the Plaintiffs' complaint, which states that the Plaintiffs provide dental treatment "either pursuant to contract or as assignees of their patients' claims." Thus, the Court finds that Sanderson has standing based upon the occasional assignment of claims he has entered into with patients.[1]

The third factor in the *Butero* analysis requires the defendant to be an ERISA entity. "ERISA entities are the employer, the plan, the plan fiduciaries, and the beneficiaries under the plan." *Morstein v. Nat'l Ins. Servs., Inc.*, 93 F.3d 715, 722 (11th Cir. 1996). Those who "control the payment of benefits" and the "determination of . . . rights" under the plan fall within this definition. *Butero*, 174 F.3d at 1213 (quoting *Morstein*, 93 F.3d at 723). These are precisely the type of activities that BCBS carries out in its management and administration of claims.

Lastly, the plaintiff's complaint must pursue compensatory relief akin to that available under ERISA before complete preemption will apply. In other words, the plaintiff's claims must "relate to" the relevant ERISA plans. *Butero*, 174 F.3d at 1212. A state-law cause of action relates to an ERISA plan for the purposes of complete preemption if (1) the plaintiff

---

[1] Proof of these assignments is critical to BCBS's complete preclusion argument under ERISA. As stated by the district court in *In re Managed Care Litigation*, "[t]his finding is contingent upon production of valid subscriber assignments from [Sanderson]. To the extent that Defendant[] [is] not able to produce proof of a valid assignment from patients, the derivative standing doctrine does not apply." 298 F. Supp. 2d at 1293; *see also Hobbs*, 276 F.2d at 1242 ("Without proof of an assignment, the derivative standing doctrine does not apply.").

could have brought any of his or her state-law claims under ERISA and (2) the plaintiff's claims are not supported by any other independent legal duty. *See Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). ERISA provides that a "civil action may be brought . . . to recover benefits due . . . under the terms of [the] plan, to enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a). As the Eleventh Circuit has noted, a "party's state law claim 'relates to' an ERISA benefit plan for purposes of ERISA preemption whenever the conduct at issue is intertwined with the refusal to pay benefits." *Garren v. John Hancock Mutual Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997). Thus, "state-law claims that have a direct connection to the administration of medical benefits under an ERISA plan . . . are completely preempted" by § 1132(a) and should therefore be recast as ERISA claims. *Franklin v. QHG of Gadsden, Inc.*, 127 F.3d 1024, 1029 (11th Cir. 1997).

Nevertheless, "[l]awsuits against ERISA plans for commonplace, run-of-the-mill state-law claims—although obviously affecting and involving ERISA plans—are not preempted by ERISA." *Baylor Univ. Med. Center v. Arkansas Blue Cross Blue Shield*, 331 F. Supp. 2d 503, 507 (N.D. Tex. 2004). Thus, "[t]he critical question for courts is whether the provider's claim is based on a direct cause of action against the managed care company, in which situation it is not preempted, or whether it is derivative to the patient's cause of action, where ERISA applies." *Orthopaedic Surgery Assocs. of San Antonio, P.A. v. Prudential Health Care Plan, Inc.*, 147 F. Supp. 2d 595, 603 (W.D. Tex. 2001). Under this

analysis, claims that concern only the agreements made between health care plans and providing physicians "do not touch on [the ERISA plan's] fiduciary status, or any claims that a beneficiary may make against [the ERISA plan] in that capacity." *Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1054 (9th Cir. 1999); *see also Lordmann Enters., Inc. v. Equicor, Inc.*, 32 F.3d 1529, 1532-33 (11th Cir. 1994) (finding state-law cause of action concerned an ERISA plan in "too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relate[d] to' the plan") (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983)).

Mitchell and Sanderson both seek relief akin to that available under ERISA. A large portion of their claims attempt to recover additional benefits under their respective patients' ERISA plans. Litigation of these matters would inevitably be intertwined with BCBS's interpretation of plan terms and its refusal to pay certain benefits. Such relief is encompassed in ERISA's remedial provisions and is completely preempted by the statute unless the Plaintiffs base their complaint on an independent legal duty owed to them by BCBS. Sanderson does not base his allegations against BCBS on any duty independent of his patients' Benefit Agreements. As a result, Sanderson's claims are completely preempted by ERISA, and federal jurisdiction is proper in this case with regard to him and the putative class out-of-network dentists.

A distinct analysis applies to Mitchell and the in-network dentists, however, because these dentists have entered into contractual agreements with BCBS. As part of the

Participating Dentist Agreements made with BCBS, in-network dentists agree to bill BCBS directly for the services they render to BCBS patients.  The participating dentists could have presumably brought actions under ERISA to litigate the amount of compensation they received for individual patients under their respective plans.  Mitchell has not chosen this route and has instead sought relief solely with respect to the Participating Dentist Agreement.  Because Mitchell's claims "arise from contracts that a health care provider makes with its medical providers, the difficulties that Congress sought to avoid with ERISA's preemption clause are not implicated here. . . .  As with many state laws of general applicability, [these] state law claims . . . have only a 'tenuous, remote, or peripheral connection with the covered plans.'" *Blue Cross of Cal.*, 187 F.3d at 1054 (quoting *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 661 (1995)).  Therefore, the claims of Mitchell and the in-network dentists fall outside the preemptive scope of ERISA, and federal jurisdiction cannot be premised on this basis.

BCBS's next ground for removal also requires an analysis of the complete preemption doctrine in order to determine whether FEHBA provides the exclusive cause of action for lawsuits relating to federal employees' Service Benefit Plans.  While the Supreme Court has placed its imprimatur on complete preemption in the ERISA context, *Taylor*, 481 U.S. at 65-67, less clarity exists with regard to the condition of federal jurisdiction under FEHBA.  Nevertheless, of the courts that have recently addressed this issue, an overwhelming majority have found that Congress' alteration of FEHBA's preemption provision in 1998 achieved

11

complete preemption of all complaints that seek relief within the scope of FEHBA's civil enforcement provisions. *See e.g.*, *Botsford v. Blue Cross & Blue Shield of Mont.*, 314 F.3d 390, 398-99 (9th Cir. 2002); *Carter v. Blue Cross & Blue Shield of Fla., Inc.*, 61 F. Supp. 2d 1237, 1240 (N.D. Fla. 1999); *St. Mary's Hosp. v. CareFirst of Md., Inc.*, 192 F. Supp. 2d 384, 387-89 (D. Md. 2002); *Doyle v. Blue Cross Blue Shield of Ill.*, 149 F. Supp. 2d 427, 432-34 (N.D. Ill. 2001); *Rievley v. Blue Cross Blue Shield of Tenn.*, 69 F. Supp. 2d 1028, 1031-37 (E.D. Tenn. 1999); *Kight v. Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.*, 34 F. Supp. 2d 334, 337-40 (E.D. Va. 1999); *but see Ramirez v. Humana, Inc.*, 119 F. Supp. 2d 1307, 1311-13 (M.D. Fla. 2000) (declining to find complete preemption under FEHBA). These well-reasoned decisions have examined FEHBA's amended preemption clause as compared to similar provisions in other statutes, most notably ERISA, and determined that Congress intended to provide an exclusive federal cause of action in cases involving federal employee Service Benefit Plans. In light of this general consensus, the Court finds it unnecessary to perform a full reconsideration of the question of whether FEHBA completely preempts state-law actions that relate to the act's civil enforcement provisions. The Court agrees with the *Carter* court's conclusion that "Congress . . . resolved the issue of whether FEHBA completely preempts state law relating to health insurance plans by enacting [a 1998 amendment], which, *inter alia*, broadened FEHBA's preemption provision." 61 F. Supp. 2d at 1240.

Nevertheless, FEHBA completely preempts only those causes of action that fall within

the scope of the act's civil enforcement provision. *Id*.; *Rievley*, 69 F. Supp. 2d at 1035. FEHBA authorizes OPM "to contract with insurance providers for federal employee health coverage and empowers OPM to order these carriers to pay benefits to enrollees where the agency determines the contract so requires." *Rievley*, 69 F. Supp. 2d at 1035. Pursuant to this authority, OPM has promulgated regulations and administrative procedures that govern the review of denied benefit claims. *Id*. A dissatisfied enrollee must initially seek reconsideration of the benefit determination from the carrier, and if the carrier persists in the denial, the enrollee must appeal to OPM. *Id*. After exhausting these administrative remedies, the enrollee may then pursue a legal action "limited to directing OPM to require the carrier to pay the amount of benefits in dispute." *Id*. (quoting 5 C.F.R. § 890.107(c)). Thus, the statute's preemptive scope extends to any action that touches directly upon a benefit determination, including those brought by providers who base their claims on the rights of their patients. *See St. Mary's Hosp.*, 192 F. Supp. 2d at 389-90.

Sanderson's allegations fall squarely within the purview of FEHBA's civil enforcement provision. BCBS has submitted evidence that demonstrates Sanderson has sought payment from BCBS pursuant to an assignment from a patient enrolled in a Service Benefit Plan. Thus, the Court cannot permit Sanderson, or his patients for that matter, to circumvent the administrative mechanism that OPM has erected to review the claims of aggrieved enrollees. FEHBA completely preempts any attempt to litigate the substance of a Service Benefit Plan determination and therefore provides a jurisdictional basis in this case.

13

On the other hand, federal jurisdiction cannot be maintained where the plaintiff's complaint seeks relief under state law and is based on an independent legal duty of the health care plan. *See Doyle*, 149 F. Supp. 2d at 433. This acknowledgment disposes of BCBS's attempt to base federal jurisdiction over Mitchell's claims on FEHBA for the same reasons jurisdiction was not proper under ERISA. Mitchell, as a participating dentist, disputes BCBS's interpretation and performance of contracts into which the parties have entered. He purportedly does not seek judicial review of any specific determination made by BCBS involving a Service Benefit Plan regulated by FEHBA. Consequently, FEHBA does not completely preempt Mitchell's state-law claims, and BCBS cannot ground federal jurisdiction on such a basis.

BCBS's final argument in support of its removal of this case to federal court invokes the Federal Officer Removal Statute. This statute "allows removal of any civil or criminal action against '[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office.'" *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996) (quoting 28 U.S.C. § 1442 (a)(1)). The "Supreme Court has noted that one of the most important functions of this right of removal is to allow a federal court to determine the validity of an asserted official immunity defense." *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 397 (5th Cir. 1998) (citing *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)). In order to effectuate this aim, "the test for removal should be broader, not narrower, than the test for official immunity." *Magnin*, 91 F.3d at

14

1427 (quoting *Willingham*, 395 U.S. at 405).

Removal is proper under § 1442(a)(1) when (1) the defendant advances a colorable defense arising from its duty to enforce federal law, and (2) the defendant establishes a "causal connection between what the officer has done under asserted official authority" and the plaintiff's action. *Id*. (quoting *Maryland v. Soper*, 270 U.S. 9, 33 (1926)). A private party may act pursuant to an obligation to enforce federal law for the purposes of this statute if a federal officer or agency directs that party's activities. *See Peterson v. Blue Cross/Blue Shield of Tex.*, 508 F.2d 55, 57 (5th Cir. 1975).[2] However, the mere "presence of federal regulations does not satisfy the requirements to assert federal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1)." *Kennedy v. Health Options, Inc.*, 329 F. Supp. 2d 1314, 1318 (S.D. Fla. 2004).

BCBS's argument is based on the fact that OPM exercises supervisory authority over the claims process for providers who seek reimbursement for the services supplied to Service Benefit Plan enrollees. As discussed above, Sanderson will ultimately be forced to base a certain portion of his claims on patients who are enrolled in Service Benefit Plans regulated by FEHBA. This fact provides a possible ground for concluding that BCBS should be granted the ability to remove this action to federal court to examine the viability of its FEHBA preclusion argument. Faced with this issue, courts have split on the key

---

[2] Decisions of the former Fifth Circuit rendered prior to October 1, 1981 are binding authority in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

15

determination of whether a health care provider's claims brought pursuant to a patient assignment establish the requisite nexus between the defendant's act and the federal official's authority. *See Holton v. Blue Cross & Blue Shield of S.C.*, 56 F. Supp. 2d 1347, 1351 (M.D. Ala. 1999) (upholding jurisdiction over health care provider's claims based on Federal Officer Removal Statute); *contra Arnold By and Through Arnold v. Blue Cross & Blue Shield of Tex., Inc.*, 973 F. Supp. 726, 740-41 (S.D. Tex. 1997) (finding lack of nexus between OPM's authority and health care plan's decisions).

This Court finds the *Holton* court's approach especially persuasive in light of the Eleventh Circuit's unpublished opinion in *Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross Blue Shield of Fla., Inc.*, No. 03-15664 (11th Cir. 2005) ("*AAOT*") . In *AAOT*, the Eleventh Circuit found federal jurisdiction was properly based on the Federal Officer Removal Statute where a health care provider brought suit pursuant to a patient assignment against a health care plan. The Court of Appeals reasoned that a "health plan insurer contracting with a governmental agency under a federal benefits program is considered a 'person acting under' a federal officer," namely OPM. *Id*. at 4. Because each "FEHBA-covered plan is governed by a contract negotiated and interpreted by OPM . . . [a]ny duty to pay for health services arises from the terms of the plan." *Id*. As a result, the court found that the health care provider "essentially complained about actions performed under the authority of a federal officer or agency," and that jurisdiction was properly based on § 1442(a)(1). *Id*. at 4-5.

Although the unpublished nature of this case means that it is not binding on the Court, the analysis found therein is an appropriate influence on the disposition here. BCBS has shown that Sanderson supplies dental services to numerous patients who obtain their dental insurance as part of a federal benefit plan. OPM has delineated a specific administrative regime to assess the claims of enrollees who seek review of their benefit determinations under these plans. BCBS contends that it acts in compliance with OPM's directives and argues that the remedial limitations that accompany OPM's benefit review process provide a defense to Sanderson's allegations. The Court finds that BCBS "has adequately put in issue the question of whether it was acting as an agent of the United States so as to provide a colorable federal defense." *Holton*, 56 F. Supp. 2d at 1352. Accordingly, the Court finds the Federal Officer Removal Statute a proper basis for federal jurisdiction over Sanderson's claims.

However, this same line of argument fails to establish federal jurisdiction over Mitchell's claims because he seeks relief solely in connection with his contractual arrangements with BCBS. While Sanderson relies on patient assignments for some of his claims, Mitchell complains of BCBS's uniform billing procedures and not of the benefits it has paid with respect to any individual patient or particular class of patients. A suit between these two private parties on this subject matter does not touch upon the procedures or regulations dictated by OPM. "Asserting that a defendant's conduct is performed at the general direction of a federal agency does not rise to the level of removal based on" the

17

Federal Officer Removal Statute. *Kennedy*, 329 F. Supp. 2d at 1318. Accordingly, BCBS does not act pursuant to federal authority when it devises its allegedly wrongful internal processes, and federal jurisdiction is therefore not proper under the Federal Officer Removal Statute.

Although the Court has concluded that federal question jurisdiction exists only over the claims of Sanderson, Mitchell's claims may remain in the federal forum under 28 U.S.C. § 1367(a) if the Plaintiffs' causes "are so related . . . [that they] form part of the same case or controversy under Article III of the United States Constitution." Congress passed this statute in reaction to the Supreme Court's ruling in *Finley v. United States*, 490 U.S. 545 (1989), where the Court significantly curtailed pendant-party jurisdiction. With this enactment, federal courts may now exert jurisdiction over the claims of a plaintiff who asserts only state-law causes of action against a non-diverse defendant as long as a co-plaintiff brings claims over which the court has original jurisdiction and both plaintiffs' claims against that defendant relate to the same common nucleus of fact. *See McCray v. Holt*, 777 F. Supp. 945, 947-48 (S.D. Fla. 1991); *see also Dickerson v. Monroe County Sheriff's Dep't*, 114 F. Supp. 2d 187, 192 (W.D.N.Y. 2000) (asserting federal jurisdiction over state-law loss of consortium claim of a wife whose husband brought federal civil rights action against non-diverse defendants).

As noted, this Court has subject matter jurisdiction over Sanderson's claims based on complete preemption under ERISA and FEHBA and the Federal Officer Removal Statute.

Because Mitchell's non-preempted state-law claims for the most part "involve the same facts, occurrences, witnesses, and evidence" as those made by Sanderson, the claims of both Plaintiffs form part of the same case or controversy. *See Palmer v. Hosp. Auth. of Randolph County*, 22 F.3d 1559, 1567 (11th Cir. 1994). The Court therefore has the power to exercise jurisdiction over the claims of Mitchell and Sanderson in this matter.[3]

**B. Motion to Dismiss**

While the Court has established its authority to exercise jurisdiction over the claims of Mitchell and Sanderson, BCBS challenges ALDA's standing to pursue relief on behalf of its members in this case. In order to maintain an action in federal court, the plaintiff bears the burden of proving each element of standing. *Bischoff v. Osceola County, Fla.*, 222 F.2d 874, 877 (11th Cir. 2000). When a defendant challenges the plaintiff's standing through a motion to dismiss, the court must construe all disputed facts in the light most favorable to the plaintiff in an effort to discern whether relief could be granted under any set of facts that could be proven consistent with the allegations. *See Chepstow Ltd. v. Hunt*, 381 F.3d 1077, 1080 (11th Cir. 2004).

An "organization has standing to sue to redress injuries suffered by its members without a showing of injury to the association itself and without a statute explicitly permitting

---

[3] The Court's finding that BCBS has not provided an adequate basis for federal jurisdiction over Mitchell's claims should not be read as a dispositive pronouncement on the applicability of ERISA or FEHBA to his complaint. The party asserting federal jurisdiction has the obligation to prove facts in support of its removal petition. *See Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). However, a shortcoming at this stage does not prevent a party from raising similar arguments during the subsequent phases of litigation.

associational standing." *Doe v. Stincer*, 175 F.3d 879, 882 (11th Cir. 1999). The Supreme Court has delineated a three-part analysis that allows for organizational standing when (1) the organization's members "would otherwise have standing to sue in their own right;" (2) "the interests it seeks to protect are germane to the organization's purpose;" and (3) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977)). In this case, the parties agree that the first two factors are established and that only the third is in dispute.

An association is an appropriate representative of its members only if the claims it seeks to assert are not so particularized that the presence of the individual members is indispensable to a just resolution of the cause. Accordingly, "an association may have standing to seek 'a declaration, injunction, or some other form of prospective relief' on behalf of its members, [but] it does not enjoy standing to seek damages for monetary injuries peculiar to individual members where the fact and extent of injury will require individualized proof." *Self-Insurance Inst. of Am., Inc. v. Korioth*, 53 F.3d 694, 695-96 (5th Cir. 1995) (quoting *Warth v. Seldin*, 422 U.S. 490, 515-16 (1975)). Even where an organizational complaint does seek injunctive or declaratory relief, the third prong of the *Hunt* test is not automatically satisfied. *Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004). Instead, the court must determine whether "the fact and extent of the injury that gives rise to the injunctive relief would require individualized proof, or [whether] the relief requested

would require the participation of individual members in the lawsuit." *Id.* (citation and internal quotations omitted).

The rule prohibiting organizations from seeking monetary redress for their members' losses disposes of nearly all of ALDA's claims. Three of the four counts in the Plaintiffs' complaint pursue only compensatory and punitive damages. These causes of action mandate the individual participation of those actually harmed and cannot be prosecuted by ALDA. On the other hand, the Plaintiffs do demand injunctive relief in their unjust enrichment claim. Thus, the Court must examine the precise contours of this cause of action under Alabama law to determine whether the fact and extent of the Plaintiffs' alleged injury requires individualized proof.

"To prevail on a claim of unjust enrichment, the plaintiff must show that the 'defendant holds money, which in equity and good conscience, belongs to the plaintiff or holds money which was improperly paid to [the] defendant because of mistake or fraud.'" *Avis Rent A Car Sys., Inc. v. Heilman*, 876 So. 2d 1111, 1122-23 (Ala. 2003) (quoting *Dickinson v. Cosmos Broad. Co., Inc.*, 782 So. 2d 260, 266 (Ala. 2000)) (emphasis omitted). Damages for unjust enrichment take the form of restitution as the trial court has the power "to balance the equities and to take into account competing principles to determine if the defendant was unjustly enriched." *Id.* at 1123 (quoting *United Coastal Indus., Inc. v. Clearheart Constr. Co.*, 802 A.2d 901, 906 (Conn. App. 2002)) (emphasis omitted). A central facet of this analysis requires the trial court to perform an "individualized inquiry into

21

the state of mind of each plaintiff." *Funliner of Ala., L.L.C. v. Pickard*, 873 So. 2d 198, 211 (Ala. 2003). "Consequently, 'the success of a claim for unjust enrichment depends on the particular facts and circumstances of each case.'" *Avis Rent A Car*, 876 So. 2d at 1123 (quoting *DJ Painting, Inc. v. Baraw Enters., Inc.*, 776 A.2d 413, 419 (Vt. 2001)).

Taking these unjust enrichment general principles into consideration, the Court finds that the "fact and extent" of the Plaintiffs' injuries under this claim necessitate a particularized focus. The Alabama Supreme Court has repeatedly reached this conclusion in the class action context. *See, e.g.*, *id.*; *Funliner of Ala.*, 873 So. 2d at 211; *Voyager Ins. Cos. v. Whitson*, 867 So. 2d 1065, 1074-76 (Ala. 2003); *Smart Prof'l Photocopy Corp. v. Childers-Sims*, 850 So. 2d 1245, 1249 (Ala. 2002); *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 108 (Ala. 2002). Under the rationale of these cases, resolution of unjust enrichment claims requires "an individualized inquiry into the subjective 'state of mind' of each class plaintiff and the facts and circumstances surrounding each . . . transaction." *Avis Rent A Car*, 867 So. 2d at 1123. For this same reason, the participation of the individual dentists in this case is indispensable to the Plaintiffs' unjust enrichment cause of action. *See Coleman v. General Motors Acceptance Corp.*, 220 F.R.D. 64, 71 (M.D. Tenn. 2004) (recognizing the similarity between the analysis utilized in class action and associational standing suits). As a result, ALDA does not have standing to pursue an injunction on behalf of its members and, having no other proper ground on which to base its standing, must be dismissed as a party to this suit.

### C. Motion to Transfer Venue

BCBS also argues that this case should be transferred to the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C. § 1404(a). The resolution of a motion to transfer venue under § 1404(a) involves a two-step process. First, "the court must determine whether the action could originally have been brought in the proposed transferee district court." *Folkes v. Haley*, 64 F. Supp. 2d 1152, 1155 (M.D. Ala. 1999). If this element is shown, "the court must decide whether the balance of convenience favors transfer." *Johnston v. Foster-Wheeler Constructors, Inc.*, 158 F.R.D. 496, 504 (M.D. Ala. 1994). In this case, it is obvious that the Plaintiffs could have originally filed their complaint in the Northern District of Alabama. That district is the location of BCBS's offices, and a substantial part of the events giving rise to this action occurred there as both Mitchell and Sanderson base their practices in the Northern District. *See* 28 U.S.C. 1391(b).

Thus, the only question before the Court is "whether the balance of justice and convenience favors transfer." *C.M.B. Foods, Inc. v. Corral of Middle Ga.*, 396 F. Supp. 2d 1283, 1286 (M.D. Ala. 2005). Courts generally consider the following factors in this analysis: "the plaintiff's initial choice of forum; the convenience of the parties; the convenience of the witnesses; the relative ease of access to sources of proof; the availability of compulsory process for witnesses; the location of relevant documents; the financial ability to bear the cost of change; and . . . trial efficiency." *Holmes v. Freightliner, LLC*, 237 F. Supp. 2d 690, 692 (M.D. Ala. 2002). In approaching these factors, the court must regard the

plaintiff's choice of venue as presumptively correct and only allow transfer to a more convenient forum, "but not one which is likely to prove equally convenient or inconvenient." *Id*. (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964)).

The balance of the convenience factors weighs heavily in favor of transfer in this case. First, all of the parties in this case reside and conduct their respective business activities in the Northern District. Thus, the records and documents at the center of this litigation are presumably situated there as are any of the parties' employees who would be witnesses at trial. Indeed, the only factor that appears to favor the maintenance of this suit in the Middle District is that this district is the Plaintiffs' chosen forum. However, even this factor is entitled to less weight than normal because (1) the complaint contains class allegations and (2) the operative facts underlying the Plaintiffs' causes of action occurred elsewhere. *See Gould v. Nat'l Life Ins. Co.*, 990 F. Supp. 2d 1354, 1358 (M.D. Ala. 1998). Thus, the overall balance of convenience strongly suggests that the Northern District of Alabama is "the forum in which judicial resources could most efficiently be utilized and the place in which the trial would be most 'easy, expeditious, and inexpensive.'" *Patel v. Howard Johnson Franchise Sys., Inc.*, 928 F. Supp. 1099, 1101 (M.D. Ala. 1996) (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981)). The Court therefore finds that transfer is appropriate in this action.

## CONCLUSION

For the reasons stated above, it is hereby ORDERED that the Plaintiffs' Motion to Remand (Doc. #7) is DENIED; the Defendant's Motion to Dismiss (Doc. #4) is GRANTED;

and the Defendant's Motion to Transfer Venue (Doc. #5) is GRANTED.  In accordance with this ruling, all claims of the Alabama Dental Association are DISMISSED WITHOUT PREJUDICE and the Alabama Dental Association is TERMINATED as a party to this suit. Additionally, the Clerk of Court shall take all steps necessary to TRANSFER this action to the United States District Court for the Northern District of Alabama.

DONE this the 3rd day of January, 2007.


_____
/s/ Mark E. Fuller
CHIEF UNITED STATES DISTRICT JUDGE

25